STATE OF NORTH CAROLINA v. FREDERICK LEON DUNSTON

No. COA02-1634

(Filed 2 December 2003)

**1. Evidence— corroborative testimony—credibility**

The trial court did not err in a first-degree sex offense with a child and taking indecent liberties with a child case by admitting the testimony of two witnesses of statements made to them by the victim as corroborative evidence, because: (1) although there are variances between the testimony of the victim and the corroborating testimony given by the two witnesses, their testimony generally corroborates the testimony of the victim; and (2) the variances in the statements relate only to the credibility and weight to be given to the statements by the jury and are not sufficient to render the testimony contradictory.

**2. Evidence— prior crimes or acts—defendant engaged in and enjoyed consensual anal sex with adult**

The trial court erred in a first-degree sex offense with a child and taking indecent liberties with a child case by improperly admitting evidence under N.C.G.S. §8C-1, Rule 404(b) that defendant engaged in and enjoyed consensual anal sex with an adult, and defendant is entitled to a new trial because: (1) the fact that defendant engaged in and liked consensual anal sex with an adult, whom he married, is not by itself sufficiently similar to engaging in anal sex with an underage victim; (2) the evidence was not relevant for any purpose other than to prove defendant's propensity to engage in anal sex; and (3) it is highly probable this testimony was prejudicial to defendant especially in light of the inconsistent and unclear nature of the remaining evidence.

Appeal by defendant from judgment entered 27 April 2001 by Judge L. Todd Burke in Guilford County Superior Court. Heard in the Court of Appeals 13 October 2003.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Allison S. Corum and Special Deputy Attorney General Judith Robb Bullock, for the State.*

*Clifford, Clendenin, O'Hale & Jones, L.L.P., by Robert I. O'Hale, for defendant-appellant.*

**STATE v. DUNSTON**

[161 N.C. App. 468 (2003)]

HUNTER, Judge.

Frederick Leon Dunston ("defendant") appeals from a judgment filed 27 April 2001 entered consistent with jury verdicts finding him guilty of first degree sex offense with a child and taking indecent liberties with a child. Defendant was sentenced to a minimum term of imprisonment of 216 months and a maximum term of 269 months. Because the trial court improperly admitted evidence that defendant engaged in and enjoyed consensual anal sex with an adult, we grant defendant a new trial.

At trial beginning on 24 April 2001, the minor victim stated she was born on 6 November 1988, and was therefore twelve years old at the time of trial. The victim then testified that while she was a foster child living with defendant and Tonya Dunston, whom defendant married during this period, defendant "sex abused" the victim in their home on several occasions. She further testified this meant touching a person in their "private spot." The victim stated that defendant had touched her "private part" in the front of her body and touched her butt with "[h]is pickle."

Earlene Thomas ("Thomas") testified that after the victim was removed from the Dunston's home she was placed with Thomas. During the time the victim was placed with Thomas, the victim required treatment for various behavioral problems at Charter Hospital. Following one such treatment, the victim told Thomas that " 'I learned that I didn't have to let that man touch me like he did.' " The victim then indicated through gestures that defendant had touched her vagina and bottom and also stated defendant had his " 'ding-a-ling . . . punching me in my bottom.' " This evidence was admitted as corroborative evidence and the jury was instructed to only consider it as such.

Tonya Dunston testified that she and defendant had taken in the victim as a foster child in December 1997 and that defendant would discipline her by having her stand in the corner or by sending her to her room. After being recalled to the stand, Tonya Dunston was asked, over defendant's objection, if she and defendant had a sexual relationship, to which she replied affirmatively. She was then asked, over defendant's objection, what sort of sexual activity they engaged in and she replied, "[m]issionary and anal." Again over defendant's objection, she was asked what sort of sexual activity defendant liked to engage in and she stated, "[a]nal."

Kim Madden ("Madden") was received by the trial court as an expert for the State in the field of interviewing and evaluating sexually abused children. She testified that she met the victim in June 1999 when the victim was taken to the Moses Cone Hospital Outpatient Clinic. Madden conducted an interview of the victim, observing the victim was a cognitively limited child and that by her mannerisms seemed to be mildly mentally retarded. Evidence of statements made by the victim during the interview were admitted as corroborative evidence. The victim told Madden that defendant had touched her " 'private part' " and put " 'his private part in my part' " such that " '[i]t felt like he was doing it to me.' " The victim also related that defendant had put his private part on her butt. The victim further stated that defendant had smacked her with his hand and that defendant had tied her to a chair, cut her with a knife, jabbed her with a pin, and injured her ankle with a rollerblade. Madden testified in her expert opinion, although it was striking that she was aware of anal sex, the victim's behavior did not necessarily mean that the victim was sexually abused. Instead, it was Madden's opinion that the victim's behavior indicated a child "who is ten and shouldn't have that type of knowledge [about anal sex] had been either inappropriately exposed to that or had experienced that."

Dr. Angela Stanley ("Dr. Stanley") testified that she examined the victim. Her examination revealed that the victim's genitalia were normal and her hymen was "quite healthy." The victim's anus, however, appeared abnormal. Dr. Stanley observed the victim's anus was smooth and somewhat hollowed out in the area between five o'clock and seven o'clock. This was termed "funneling" and can exist where there has been repeated stretching or friction in that area so the folds of the anus have been stretched out. According to Dr. Stanley, such a finding was rare and can be consistent with anal abuse or anal sex. In her opinion, the findings from the examination were supportive of the victim's statements about being sexually abused. On cross-examination, Dr. Stanley conceded that the conditions she observed could be caused by sexual abuse, but not necessarily so. On redirect examination, Dr. Stanley testified that she had performed over 800 examinations of child sexual abuse victims, including victims of anal sexual abuse, and this was the only case in which she had observed funneling.

The defense, in its case in chief, called Dr. Scott Bowie ("Dr. Bowie") as an expert in obstetrics, gynecology, and sexual abuse examination. Dr. Bowie testified that he reviewed Dr.

Stanley's notes and that those notes were inconsistent with vaginal sexual intercourse, and further that the findings from the anal examination did not necessarily indicate sexual abuse. Dr. Bowie further stated that such a finding can be normal, particularly in cases of women who have not had a pregnancy or a vaginal delivery. On cross-examination, Dr. Bowie testified that there were two schools of thought on whether funneling of the anus was indicative of anal sexual abuse, and that one side believed that such findings were indicative of anal sexual abuse.

Defendant testified on direct examination, in his own behalf, about an interview with the investigating officer. Defendant admitted that he lied to the investigating officer when asked if he had ever spanked the victim and admitted he had spanked her in violation of the rules for the foster parent program. On cross-examination, defendant stated the officer had advised him of his *Miranda* rights. When the State asked defendant if the investigating officer subsequently asked about the victim's allegations of abuse the following exchange occurred:

Q. . . . Now, [the investigating officer] stated to you, "Did you do this"; isn't that true?

A. She asked me that.

Q. And what was your response?

A. I said, "Do I have to answer that?"

Q. And what did [the investigating officer] say?

A. She—I believe she said no.

Q. And what was your response at that time?

A. I asked to terminate the interview.

Q. But your initial response was do I have to answer?

A. That's correct.

Q. It wasn't no?

A. I said—it was not no.

Defendant did not object or move to strike any of this testimony.

Defendant also called Lisa Childress ("Childress") who had been a classroom teacher of the victim. Childress testified that in 1996,

prior to being placed in foster care with defendant, the victim had numerous behavioral problems including inserting the names of all the students in her class into the chant: "male and female . . . 'sitting in a tree, K-I-S-S-X-Y-Z. F— her up. F— her down. F— her hole all around.' " Childress also stated that records showed there were other instances where the victim had used sexually explicit language.

At the close of all the evidence, the trial court allowed the defense motion to dismiss a charge of first degree statutory rape, but allowed the charges of first degree sex offense, based on the alleged anal sexual abuse, and indecent liberties to go to the jury.

The issues are whether: (I) the testimony of Thomas and Madden was admissible as corroborative evidence; (II) testimony that defendant liked to engage in anal sex was admissible under Rule 404(b); and (III) it was plain error for the State to elicit testimony that defendant chose to terminate his interview with the investigating officer and did not deny his guilt after being given his *Miranda* warnings.

I.

[1] Defendant first contends that the testimony by Thomas and Madden of statements made to them by the victim was inadmissible as corroborating evidence. We disagree. At the outset, we note that the State contends Madden's testimony was admissible as statements made for the purpose of medical diagnosis or treatment. The record, however, clearly reveals that these statements were admitted solely for purposes of corroborating the victim's testimony.

"Our courts have long held that a witness's prior consistent statements may be admissible to corroborate the witness's in-court testimony." *State v. Guice*, 141 N.C. App. 177, 201, 541 S.E.2d 474, 489 (2000). "Corroborative testimony is testimony which tends to strengthen, confirm, or make more certain the testimony of another witness." *State v. Rogers*, 299 N.C. 597, 601, 264 S.E.2d 89, 92 (1980). Where corroborative testimony tends to add strength and credibility to the testimony of another witness, the corroborating testimony may contain new or additional facts. *See State v. Farmer*, 333 N.C. 172, 192, 424 S.E.2d 120, 131 (1993). Variances in detail between the generally corroborative testimony and the testimony of another witness reflect only upon the credibility of the statement. *State v. Martin*, 309 N.C. 465, 476, 308 S.E.2d 277, 284 (1983). Whether testimony is, in fact, corroborative is a factual issue for the jury to decide after proper instruction by the trial court. *State v. Burns*, 307 N.C. 224, 231-32, 297 S.E.2d 384, 388 (1982).

In this case, although there are variances between the testimony of the victim and the corroborating testimony given by Thomas and Madden, their testimony generally corroborates the testimony of the victim. The variances in the statements relate only to the credibility and weight to be given to the statements by the jury and are not sufficient to render the testimony contradictory.

## II.

**[2]** Defendant next contends that admission of testimony by Tonya Dunston that defendant engaged in and liked anal sex is inadmissible under Rule 404(b) of the North Carolina Rules of Evidence. We agree.

Under Rule 404(b), evidence tending to show a defendant committed other wrongs, crimes, or acts and his propensity to commit such acts is admissible as long as it is relevant for some purpose other than to show the propensity of a defendant to commit the crime charged. *State v. Coffey*, 326 N.C. 268, 279, 389 S.E.2d 48, 54 (1990). Examples of purposes for which evidence of other crimes, wrongs, or acts is admissible include: "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2001). "Under Rule 404(b) a prior act or crime is 'similar' if there are ' "some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both." ' " *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 890-91 (1991) (citations omitted). Where, however, the State fails to show sufficient similarity between the acts "beyond those characteristics inherent to [the acts]," evidence of the prior acts is inadmissible under Rule 404(b). *See State v. Al-Bayyinah*, 356 N.C. 150, 155, 567 S.E.2d 120, 123 (2002).

In this case, the State contends evidence defendant ·engaged in and liked anal sex was relevant to prove both identity and motive. We conclude that the fact defendant engaged in and liked consensual anal sex with an adult, whom he married, is not by itself sufficiently similar to engaging in anal sex with an underage victim beyond the characteristics inherent to both, i.e., they both involve anal sex, to be admissible under Rule 404(b). We conclude this evidence was not relevant for any purpose other than to prove defendant's propensity to engage in anal sex, and thus, the trial court erred in admitting this evidence.

Furthermore, given the sensitive and potentially inflammatory nature of this evidence it is highly probable this testimony was prej-

udicial to defendant, especially in light of the inconsistent and unclear nature of the remaining evidence in this case, which includes: (1) testimony of the State's expert that, in her opinion, the victim's behavior did not necessarily mean that she had been sexually abused, but rather that she had either experienced anal sex or had inappropriate knowledge of anal sex; (2) evidence that the victim had knowledge of sexually explicit language and activities prior to being placed in foster care with defendant; and (3) expert medical testimony from both sides recognizing that findings from the medical examination of the victim did not necessarily indicate sexual abuse and that there were differing opinions within the medical community as to the significance of such findings. As we have determined that evidence defendant engaged in and enjoyed consensual anal sex with his wife was improperly admitted under Rule 404(b) and that this error was probably prejudicial to him, defendant is entitled to a new trial.

III.

Defendant finally argues that the trial court committed plain error in allowing the State to elicit testimony from him that after being given his *Miranda* warnings he terminated the interview with the investigating officer when she began questioning him about the allegations of sexual abuse and that he did not deny the allegations.

Assuming the examination about which defendant now complains violates "the implicit assurance contained in the *Miranda* warnings that silence will carry no penalty[,]" where a defendant fails to object to questioning in violation of *Miranda* rights, that violation is subject only to plain error review on appeal. *State v. Walker*, 316 N.C. 33, 38, 340 S.E.2d 80, 83 (1986). "The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to 'plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict." *Id.* at 39, 340 S.E.2d at 83 (citation omitted).

As we have already granted defendant a new trial in this case, it is unnecessary to comment on whether the State's examination constituted plain error.

New trial.

Chief Judge EAGLES and Judge GEER concur.