726 S.E.2d 900 (2012)
STATE of North Carolina
v.
Larry David DAVIS, II, Defendant.
No. COA11-591.
Court of Appeals of North Carolina.
June 19, 2012.
*901 Attorney General Roy Cooper, by Assistant Attorney General Margaret A. Force, for the State.
M. Alexander Charns, Durham, for defendant-appellant.
GEER, Judge.
Defendant Larry David Davis, II appeals from his conviction of two counts of first degree sexual offense with a child and two counts of indecent liberties with a child. On appeal, defendant raises numerous challenges to the trial court's admission and exclusion of evidence. Based on our review of the record, we hold that the trial court erred under Rule 404(b) of the Rules of Evidence in admitting evidence of defendant's writings about forcible, non-consensual anal sex with an adult female acquaintance and erred in allowing the State to ask defendant on cross-examination questions that summarized the results of a psychological evaluation not admitted into evidence that described defendant as a psychopathic deviant. Further, we believe that there is a reasonable possibility that in the absence of these errors, the jury would have reached a different verdict. We, therefore, grant defendant a new trial.

Facts
The State's evidence tended to show the following facts. Defendant and Ms. Rebecca Allen, who were married, had a son, Luke,[1] who was born on 4 March 2002. Since both *902 parents worked, Luke was cared for during the day by Ms. Allen's aunt, Sherry Allen.
In March 2006, when Luke was four, he told Sherry that "my daddy stuck his pee-bug in my butt." Sherry called Ms. Allen at work and told her what Luke had said. Ms. Allen was unsure what to do, but got an appointment for Luke with his pediatrician for the next morning. The pediatrician called the Johnston County Department of Social Services ("DSS"), and, after meeting with DSS, Ms. Allen and Luke stayed the night at Sherry's house to give defendant time to remove his belongings from the marital home. Luke then went to a medical evaluation in Raleigh. Nothing abnormal was found during his physical examination. Luke also denied, during the exam, any sexual contact or sexual touching.
About a week after the 2006 incident, Ms. Allen filed for divorce and sole custody. Defendant did not have any contact with Luke between March and December 2006. He was then allowed supervised visits. In the middle of 2007, defendant was allowed unsupervised visitation during the day.
In June 2008, Luke came home from an unsupervised visit and told his mother that "his father had put his pee-bug in his butt and his mouth again." Ms. Allen took Luke to the emergency room that night. The medical personnel took Luke's clothes and obtained a rape kit. The emergency room physician did not see any physical evidence of trauma, and no semen or sperm were found on "the rectal smears and swabs" taken from Luke. Sperm was found, however, on Luke's underpants in an area consistent with a sex offense involving penetration of a child's anus. The DNA profile matched that of defendant.
Defendant was indicted for two counts of indecent liberties with a child and two counts of first degree sexual offense with a child. He was also indicted for two counts of sexual offense in a parental role and two counts of felony child abuse involving sexual act, but those charges were dismissed prior to trial.
Luke testified at trial that defendant put his pee-bug into Luke's butt and mouth and that it hurt. The State also introduced evidence by Luke's mother, Luke's great aunt and great uncle, several nurses and doctors who examined Luke, two DSS employees, and a sheriff's detective who testified, in corroboration, about what Luke had told them.
Defendant's sister and his mother testified that defendant and Luke had a good relationship and would play outside a lot. Defendant's sister testified that Luke once asked her why she did not "believe what [his] mom says." Luke also told defendant's sister that his mother told him that the reason he was not allowed to see his father was because he "tells lies all the time and said that he tells lies to the Judge."
Defendant's mother testified that on one visit, Luke had questioned her as to why defendant could not live with him anymore. When told it was because of things Luke was saying about defendant, Luke told her that he "said that because my mommy told me to." Defendant's mother also testified that on another occasion when she was speaking on the phone with Luke, Ms. Allen told Luke to tell "what your daddy did, go ahead, you can tell her, tell her, and he said, no. And she said, you can tell her, go ahead and tell her what he did."
Defendant also testified in his own defense, denying all allegations that he had sexually assaulted his son or had other inappropriate contact with his son. Defendant testified that Ms. Allen mentioned divorce starting in the summer of 2005 and again mentioned divorce the week before the 2006 allegations that he had sexual contact with his son. According to defendant, the couple's disagreements during their marriage came from defendant not wanting Ms. Allen's family drinking and "smoking dope" around Luke. Defendant did not like Sherry, Ms. Allen's aunt, taking care of Luke because Sherry exposed Luke to inappropriate behaviors.
Defendant testified that after they separated, Ms. Allen fought every request for additional visitation. He was not able to see his son at all from March to December 2006 and, subsequently, visitation was supervised, one hour every other week. By the time of the allegations in 2008, defendant was having unsupervised visitation with his son every *903 other weekend, Saturday 9:00 a.m. to 5:00 p.m., Sunday from 9:00 a.m. to 5:00 p.m., and every Wednesday evening from 5:00 p.m. to 7:00 p.m. Less than a month before the allegations were made, defendant had a conversation with Luke about staying over on Saturday nights.
On cross-examination, the State questioned defendant about writings in a composition book that belonged to defendant but that had an inscription indicating it belonged to "Kevin Connolly." While the State contended that the composition book contained defendant's journal entries, defendant testified that the writing was fictional and included short stories he had written set in 1868 and 1948. The book included a description of anal intercourse being forced on an adult woman.
The jury convicted defendant of all the charges on 28 September 2010. The trial court sentenced defendant (1) to a term of 240 to 297 months imprisonment for one count of first degree sexual offense, (2) to a consecutive sentence of 240 to 297 months imprisonment for the second count of first degree sexual offense, (3) to a consecutive sentence of 16 to 20 months imprisonment for one count of indecent liberties with a child, and (4) to a sentence of 16 to 20 months imprisonment for the second count of indecent liberties with a child that was to run concurrently with the first sexual offense sentence. Defendant timely appealed to this Court.

I
We first address defendant's contention that the trial court erred in denying his motion to dismiss the indecent liberties charges. The question for the Court is "`whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting State v. Barnes, 334 N.C. 67, 75, 430 S.E.2d 914, 918-19 (1993)).
Defendant argues that the State's Bill of Particulars indicated that with respect to those charges, the State was only relying on touching and not anal sex and that Luke did not testify about any touching. The State "is limited to the items set out in the bill of particulars." N.C. Gen.Stat. § 15A925 (e) (2011).
In this case, the Bill of Particulars states that "the conduct alleged in 09crs 55971 [sic] and 09crs 5811 [sic] (date of offense June 15, 2008) is anal intercourse. And the conduct alleged in 09crs 55972 [sic] and 09crs 5812 [sic] (date of offense June 14, 2007 through June 14, 2008) is fellatio." The indecent liberties charges were 09 CRS 5811 and 09 CRS 5812, with one count based on anal intercourse and one on fellatio. Defendant does not dispute that the State presented sufficient evidence of anal intercourse and fellatio. The trial court, therefore, properly denied the motion to dismiss.

II
Defendant next contends that the trial court erred, under Rule 404(b), in admitting defendant's writings regarding forcible anal sex. The entry in the composition book, which was in the form of a letter to a woman defendant had known, read: "[Y]ou thought I was going to kiss your neck until you felt my penis on your back, you said, no, don't, please, that's when I put you on the bed, held you down with one hand and used my other to put my penis in your butt." He continued: "I wanted to say I'm sorry when I raped you...." Defendant was cross-examined and the composition book was admitted over defendant's objection. The specific pages referenced by the State were published to the jury. While defendant contended the composition book was fiction, the State argued that the described events actually occurred.
Our Supreme Court has explained that "`as a careful reading of Rule 404(b) clearly shows, evidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused.' State v. Weaver, 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986).... `Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action *904 more probable or less probable than it would be without the evidence.' N.C.G.S. § 8C-1, Rule 401 (1988)...." State v. Coffey, 326 N.C. 268, 278, 389 S.E.2d 48, 54 (1990). The Court has stressed that "the rule is, at bottom, one of relevancy." State v. Jeter, 326 N.C. 457, 459, 389 S.E.2d 805, 807 (1990). The "`acid test'" for whether evidence may be admitted under Rule 404(b) "`is its logical relevancy to the particular... purpose ... for which it is sought to be introduced.'" Id. at 461, 389 S.E.2d at 808 (quoting State v. McClain, 240 N.C. 171, 177, 81 S.E.2d 364, 368 (1954)).
The Supreme Court has recently reiterated that "[a] trial court's rulings on relevancy are technically not discretionary, though we accord them great deference on appeal." State v. Lane, 365 N.C. 7, 27, 707 S.E.2d 210, 223, cert. denied, ___ U.S. ___, 132 S.Ct. 816, 181 L.Ed.2d 529 (2011). We, therefore, review the trial court's determination of relevance de novo, "but accord[] deference to the trial court's ruling." State v. Houseright, ___ N.C.App. ___, ___, 725 S.E.2d 445, 448 (2012).
Here, the trial court admitted the composition book entry on the grounds that "it shows a pattern," apparently assuming that the entry described an actual event. On appeal, the State argues in addition that the written material was relevant to prove intent and sexual gratification, an element of the indecent liberties offense. See N.C. Gen.Stat. § 14-202.1 (2011).
We assume that by referencing "a pattern," the trial court meant that the composition book showed a common plan or scheme. We have found no authority  and the State has cited none  suggesting that "a pattern," without more, is a proper purpose. Instead, evidence of a pattern may be relevant to the purpose of showing a common plan or scheme. See, e.g., State v. Williams, 355 N.C. 501, 563, 565 S.E.2d 609, 645 (2002) ("[The witness'] testimony concerning the choking incidents between herself and defendant were admissible under Rule 404(b) in order to show motive, plan, common scheme, and intent, as the trial court found, since defendant had shown a pattern of choking his victims.").
In order for evidence of another crime or other bad acts to be admissible, "the two acts must be sufficiently similar as to logically establish a common plan or scheme to commit the offense charged, not merely to show the defendant's character or propensity to commit a like crime." State v. Willis, 136 N.C.App. 820, 823, 526 S.E.2d 191, 193 (2000). Here, the State sought to introduce evidence that defendant wrote about having non-consensual anal intercourse with an adult woman whom he knew. The charges in this case, however, involved anal penetration of defendant's six-year-old son. The only overlapping fact is anal intercourse.
In State v. Dunston, 161 N.C.App. 468, 469, 588 S.E.2d 540, 542 (2003), the defendant was found guilty of first degree sex offense with a child and taking indecent liberties with a child. On appeal, defendant argued that the trial court erred in admitting his wife's testimony that she and defendant engaged in anal sex. Id. This Court found that "the fact defendant engaged in and liked consensual anal sex with an adult, whom he married, is not by itself sufficiently similar to engaging in anal sex with an underage victim beyond the characteristics inherent to both, i.e., they both involve anal sex, to be admissible under Rule 404(b)." Id. at 473, 588 S.E.2d at 545. Finding the evidence "was not relevant for any purpose other than to prove defendant's propensity to engage in anal sex," this Court rejected the State's contentions regarding purpose and held the trial court erred in admitting the testimony. Id.
The only distinction between Dunston and this case is that the anal sex with an adult reported in the composition book was nonconsensual. Yet, the actual force used with the adult in the composition book is not analogous to the constructive force theory that applies with sexual conduct between a parent and a child. See State v. Etheridge, 319 N.C. 34, 47, 352 S.E.2d 673, 681 (1987) ("The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit *905 threats and displays of force are not necessary to effect the abuser's purpose.").
While "the Court has been markedly liberal in admitting evidence of similar sex offenses to show one of the purposes enumerated in Rule 404(b), ... [n]evertheless, the Court has insisted the prior offenses be similar and not too remote in time." State v. Scott, 318 N.C. 237, 247, 347 S.E.2d 414, 419-20 (1986). Here, apart from the fact that anal intercourse was involved, the acts bore no resemblance to each other, involving different genders, radically different ages, different relationships between the parties, and different types of force.
The State has cited no case, and we have found none, in which our appellate courts have upheld the admission of evidence so lacking in similarities. By way of comparison, in State v. Brown, ___ N.C.App. ___, ___, 710 S.E.2d 265, 269-70 (2011), aff'd per curiam, ___ N.C. ___, 722 S.E.2d 508 (2012), this Court considered the admissibility of pornography showing incestuous sexual acts ("Family Letters") in a prosecution for sexual offenses committed by a father on his daughter. While the Court noted that prior decisions had concluded that a defendant's possession of general pornography was inadmissible, the Court pointed out that the Family Letters material "was of an uncommon and specific type of pornography; the objects of sexual desire aroused by the pornography in evidence were few; and the victim was the clear object of the sexual desire implied by the possession." Id. at ___, 710 S.E.2d at 269. The Court concluded: "Where the pornography possessed consists solely of incestuous encounters, there arises a strong inference that the possessor is sexually excited by at least the idea of, if not the act of, incestuous sexual relations. Accordingly, in this case, the fact of [the defendant's] possession of incestuous pornography reasonably supports the inference that [the defendant] was sexually desirous of an incestuous relationship." Id. at ___, 710 S.E.2d at 271.
Here, the State has not shown that defendant's writings about forcible, non-consensual anal sex with an adult woman friend give rise to any inference that defendant would be desirous of or obtain sexual gratification from anal intercourse with his four-year-old or six-year-old son. As this Court pointed out in State v. Beckelheimer, ___ N.C.App. ___, ___, 712 S.E.2d 216, 220 (2011), disc. review allowed, ___ N.C. ___, 720 S.E.2d 389 (2012), "[i]n most, if not all, cases addressing admissibility of evidence of prior sexual conduct by a defendant which occurred with another victim years prior to the crime at issue, the age difference and relationship between the defendant and the persons sexually abused were similar, in addition to similarities in the actions of the defendant. In particular, in cases of sexual abuse of children, the defendants were adults at the time of the prior acts and the evidence of prior similar acts dealt with other acts by a defendant upon similarly-aged minor victims." This Court concluded, therefore, that evidence of touching and oral sex by the defendant when he was a teenager with another minor was not admissible under Rule 404(b) in a prosecution for the 27-year-old defendant's touching and oral sex with an 11-year-old. Id. at ___, 712 S.E.2d at 220.
In the absence of any authority upholding the admission of evidence with such a lack of similarity, we hold that the composition book entry was not relevant to any proper purpose. It was, therefore, inadmissible under Rule 404(b).

III
Defendant next contends the trial court committed reversible error by allowing the State to ask defendant, during cross-examination, questions that assumed facts not in evidence. The prosecutor cross-examined defendant regarding a report prepared by Milton Kraft who did not testify at trial. The trial transcript does not specifically identify Milton Kraft other than indicating that he was an expert who evaluated defendant in connection with the 2006 investigation and the custody case relating to Luke.
After marking for identification purposes the evaluation conducted by Milton Kraft, the State asked defendant the following questions:
Q. You saw Milton Kraft?
A. Yes, sir.

*906 Q. Isn't it true that when you were with Milton Kraft, the MMPI results were marginally valid because you attempted to place yourself in an overly positive light by minimizing faults and denying psychological problems?
MR. PLEASANT: Objection.
THE COURT: Overruled.
. . . .
Q. Does it indicate that it says, a prominent elevation on the psychopathic deviant scale?
MR. PLEASANT: Objection.
THE COURT: If that's what it says.
BY MR. JACKSON:
Q. Does it say that?
MR. PLEASANT: Objection to what the document says, Your Honor.
THE COURT: Overruled.
THE WITNESS: Read that again. I'm sorry. Prominent  yes, that's what it says in a third of the sentence, yes.
Q. The whole sentence says, the clinical scale prototype used in the development of this narrative included a prominent elevation on the psychopathic deviant scale. That's the whole sentence, is it not?
A. That is.
MR. PLEASANT: Objection.
THE COURT: Overruled.
BY MR. JACKSON:
Q. These individuals may be risk takers who may do things others do not approve of simply for the personal enjoyment of doing so. Does it not say that?
MR. PLEASANT: Objection.
THE COURT: Overruled.
THE WITNESS: Yes.
BY MR. JACKSON:
Q. He tends to be generally oriented towards thrill seeking and self gratification. Does it not say that?
MR. PLEASANT: Objection.
THE COURT: Overruled.
THE WITNESS: Yes, it does.
BY MR. JACKSON:
Q. May occasionally show bad judgment and tends to be somewhat self-centered, pleasure oriented, narcicisstic [sic] and manipulative.
MR. PLEASANT: Objection.
THE COURT: Overruled.
BY MR. JACKSON:
Q. Does it not say that?
A. Yes, it does.
Mr. Kraft did not testify, and the report was never admitted into evidence for any purpose.
North Carolina has long adopted "the rule of law which forbids a prosecuting attorney to inject into the trial of a cause to the prejudice of the accused by argument or by insinuating questions supposed facts of which there is no evidence." State v. Phillips, 240 N.C. 516, 524, 82 S.E.2d 762, 767 (1954). In Phillips, our Supreme Court held that "where a prosecuting attorney persists in asking witnesses improper questions for the purpose of getting before the jurors prejudicial matters which the law does not permit them to hear, the questions produce a highly prejudicial effect on the minds of the jurors," id. at 528, 82 S.E.2d at 770, and ordered a new trial. Id. at 529, 82 S.E.2d at 771.
Here, the State does not argue that the report was admissible on any basis. Rather, it contends that defendant opened the door to the questions when defendant testified that he was ordered to undergo the evaluation with Mr. Kraft as part of the custody battle and that as a result of the evaluation performed by Mr. Kraft and Mr. Kraft's recommendation, the custody court granted defendant immediate rights to visitation with his son. The State further argues that the questions regarding "the evaluation were admissible through cross-examination but not through extrinsic evidence as evidence relating to his credibility."
The State cites no authority at all in support of its claim that defendant opened the door. Generally, the rule is that "evidence which is otherwise inadmissible is admissible to explain or rebut evidence introduced by defendant.... Therefore, where a defendant examines a witness so as to raise an inference favorable to defendant, which is contrary to the facts, defendant opens the door to the introduction of the State's rebuttal *907 or explanatory evidence about the matter." State v. O'Hanlan, 153 N.C.App. 546, 561, 570 S.E.2d 751, 761 (2002).
In contending that defendant opened the door by testifying that as a result of Mr. Kraft's evaluation, the trial court granted him visitation, the State points to defendant's testimony on redirect  only after the challenged cross-examination questions. If anything, the State opened the door to the redirect testimony.
Apart from the redirect, the State also points to defendant's introduction of the district court's visitation orders during the testimony of an assistant clerk of court, indicating only that defendant was ordered to undergo an evaluation and, subsequently, the district court granted defendant visitation. As the trial court noted, and the State conceded, the order allowing visitation after the evaluation did not include any reference to an opinion by Mr. Kraft. Accordingly, the State has failed to show factually or legally that defendant opened the door to the questions summarizing the contents of Mr. Kraft's evaluation.
With respect to defendant's credibility, the State cites no authority other than Rule 608 of the Rules of Evidence as justifying the questions. Rule 608(a) allows the credibility of a witness to be attacked by opinion and reputation evidence of character, although "the evidence may refer only to character for truthfulness or untruthfulness." Rule 608(b) provides that specific instances of the conduct of a witness may "if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness," although the acts may not be proven by extrinsic evidence.
The only question that the State attempts to defend on this basis is the one asking defendant to acknowledge that Mr. Kraft wrote that "the MMPI results were marginally valid because [defendant] attempted to place [himself] in an overly positive light by minimizing faults and denying psychological problems[.]" Even assuming without deciding that this question fell within the scope of Rule 608, the State has not explained how Rule 608 authorizes the questions suggesting that the test indicated that defendant was a "psychopathic deviant," that he was a "risk taker[] who may do things others do not approve of simply for the personal enjoyment of doing so," and that he is "oriented towards thrill seeking and self gratification." Since none of these questions relate to defendant's truthfulness, Rule 608 is inapplicable.
In sum, the State, through cross-examination questions, placed before the jury expert evidence that was not otherwise admissible. As our Supreme Court stated in Phillips, 240 N.C. at 524, 82 S.E.2d at 768 (quoting Thurpin v. Commonwealth, 147 Va. 709, 714, 137 S.E. 528, 529 (1927)), "`[t]he form of these questions was highly improper. They were more in the nature of testimony and an argument by the [prosecutor] before the taking of the testimony had been completed and contained statements of facts not supported by the evidence.'" The trial court erred in overruling defendant's objections to the State's reading Mr. Kraft's evaluation to the jury in the form of cross-examination questions.

IV
Although we have agreed with defendant that the trial court erred in admitting the evidence of the composition book and in overruling defendant's objections to the State's cross-examination questions summarizing a non-testifying expert's report, the question remains whether the errors were sufficiently prejudicial to warrant a new trial. Under N.C. Gen.Stat. § 15A-1443(a) (2011), defendant bears the burden of showing "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."
This Court in Dunston ordered a new trial after finding it "highly probable," in light of the State's "inconsistent and unclear" evidence, that the testimony regarding the defendant's anal intercourse with his wife was prejudicial to the defendant "given the sensitive and potentially inflammatory nature" of the evidence. 161 N.C.App. at 473-74, 588 S.E.2d at 545. The evidence in this case was not, however, as equivocal as that in Dunston.
*908 Here, the State presented evidence that Luke's underwear, included in the 2008 rape kit, was stained with sperm that closely matched defendant's DNA profile. In addition, Luke, who was in the third grade at the time of trial, testified specifically and unequivocally that his father put "his private part in [his] mouth and [his] butt." The State also put on substantial corroborative evidence.
On the other hand, no semen was found on the rectal smears and swabs taken from Luke. Defendant presented evidence that two weeks before the 2008 allegation, his ex-wife had masturbated him with her hand, and he had ejaculated into her hand. The State's experts acknowledged that someone other than defendant could have placed the sperm on the underwear, and a secondary transfer from one item of clothing to another was possible, particularly if the body fluid was wet. In addition, defendant, through cross-examination of Luke and the testimony of other witnesses, presented evidence that would have allowed the jury to conclude that defendant's ex-wife had coached Luke regarding the allegations.
While the jury could have reasonably found this evidence self-serving and not entitled to much weight, the improperly admitted evidence of the composition book entry and the expert report essentially guaranteed that the jury would find defendant guilty. The jury had before it, in defendant's own handwriting, a document that the State credibly argued was a confession that defendant had raped a female friend and had forcible, nonconsensual anal intercourse with her. In addition, the jury was told  through the State's improper cross-examination questions  that an expert had determined that defendant had "a prominent elevation on the psychopathic deviant scale," as well as being a risk taker willing to do things others do not approve of for the personal enjoyment of doing so.
We cannot conclude that the combined effect of an admission of rape and non-consensual anal intercourse together with an expert assessment of psychopathic deviancy was non-prejudicial. See State v. Canady, 355 N.C. 242, 246, 559 S.E.2d 762, 764 (2002) (holding that although neither "of the trial court's errors, when considered in isolation, were necessarily sufficiently prejudicial to require a new trial, the cumulative effect of the errors created sufficient prejudice to deny defendant a fair trial"); State v. White, 331 N.C. 604, 616, 419 S.E.2d 557, 564 (1992) (holding that cumulative evidence of prior sexual assaults allegedly committed by defendant were prejudicial entitling defendant to new trial).
In light of defendant's evidence regarding the presence of the DNA, the ex-wife's possible coaching of the young son, and the conflict between defendant and his ex-wife, there is a reasonable possibility that in the absence of the composition book and the cross-examination questions, the jury would have reached a different verdict than guilty of both first degree sexual offense with a child and indecent liberties with a child. Although we are mindful of and troubled by the effect on the child, the errors committed at the first trial require that defendant be granted a new trial. Because we believe it unlikely that the other issues raised on appeal will recur, we do not address them.
New trial.
Judges STEELMAN and BEASLEY concur.
NOTES
[1] The pseudonym "Luke" is used throughout this opinion to protect the minor's privacy and for ease of reading.