McGEE, Chief Judge.
Omar Kareem Sellers ("Defendant") appeals from judgments entered upon jury verdicts finding him guilty of first-degree kidnapping, attempted statutory rape of a person who was fourteen years old, sexual offense of a person who was fourteen years old, and taking indecent liberties with a child. We find no error in part, and remand for resentencing.
I. Facts and Procedural History
Evidence at trial showed that Defendant was operating his mobile ice cream business in Wake County on 16 August 2012, when he met fourteen-year-old J.D.E. J.D.E., who was staying with relatives in Garner, interacted with Defendant twice that day. J.D.E.'s first encounter with Defendant was in the morning, when Defendant sold ice cream to her and other children, and then offered them free ice cream if they would play a trivia game with him. During J.D.E.'s second encounter with Defendant later that day, he again sold her ice cream, played trivia games with the neighborhood children, and told the children he would hire anyone who wanted a job. The children, including J.D.E., gave Defendant their names and ages. Defendant told J.D.E. he needed help selling ice cream in another area of Garner, and she accepted his job offer. J.D.E. got into Defendant's ice cream truck, they drove to nearby neighborhoods, and J.D.E. helped Defendant with ice cream sales. Before Defendant drove from J.D.E.'s neighborhood with her in his ice cream truck, Defendant did not ask J.D.E.'s parent or guardian for permission to leave with her.
When Defendant left the Garner area, driving towards Clayton, he began asking J.D.E. inappropriate questions, such as whether she would consider Defendant, who was a thirty-nine-year-old man, to be her boyfriend. Defendant stopped to get J.D.E. food from a McDonald's, and eventually parked his ice cream truck at a remote self-service car wash. Both the McDonald's and the car wash were located in Johnston County. While parked at the car wash, Defendant continued asking inappropriate questions including, as J.D.E. put it at trial: "were my boobs fake" and "if my breasts were fake."
After helping Defendant clean empty ice cream boxes, J.D.E. got back inside the ice cream truck and Defendant showed her where he kept his sex toys and marijuana brownies. Defendant then asked J.D.E. to show him her breasts, and she did, because she thought if she "cooperated maybe everything would be okay." Defendant fondled J.D .E.'s exposed breasts. Defendant then asked J.D.E. to pull her pants down and he digitally penetrated her vagina. J.D.E. told Defendant: "I don't feel comfortable," and Defendant told her: "I'm almost done." Finally, Defendant had J.D.E. bend over a stool and he attempted to insert his penis into her vagina. J.D.E. pushed him away and "kept repeating that [she] wasn't comfortable."
Shortly after J.D.E. pushed Defendant away, she told him she wanted to go home. Defendant drove away from the car wash, telling J .D.E. he would take her home. However, an Amber alert had been issued identifying Defendant and his ice cream truck, and as Defendant was driving with J.D.E., police stopped Defendant's truck. Police removed J.D.E. from the ice cream truck and placed Defendant under arrest.
J.D.E. provided statements to Garner police detectives and went with police to identify the McDonald's and the car wash where Defendant had taken her. A police officer took J.D.E. and her mother to WakeMed Hospital, where medical professionals performed a rape kit on J.D.E. Defendant voluntarily provided the State Bureau of Investigation ("SBI") with DNA samples. Agents from the SBI analyzed samples taken from J.D.E.'s rape kit and clothing and concluded that her underwear contained semen. However, the samples lacked sufficient quantity and/or quality for the SBI to determine if Defendant's DNA was the male contributor to the samples.
At trial, two other young girls testified regarding an encounter each of them had with Defendant during the summers of 2010 and 2011. In each event, the girls and their families reported Defendant to the police. M.U. testified that in 2011, when she was eleven years old, Defendant gave her free ice cream, offered her work several times, gave her his business card, and told her if she came over, he would give her "Jell-O shots." She testified that Defendant asked her if she could make her "booty bounce." M.U. never got into Defendant's ice cream truck, but positively identified a picture of it from the present case as being the same ice cream truck Defendant had used in 2011.
T.J. met Defendant in 2010, when she was sixteen years old, at her neighborhood pool. Defendant spoke with T.J., her sister, and a friend about working for him in his ice cream truck. That day, both T.J. and her sister worked separately with Defendant. T.J. got into Defendant's ice cream truck with Defendant, but he did not drive around selling ice cream, instead he stopped at a self-service car wash. During the drive to the car wash, Defendant started talking about marijuana and asked T.J. if she smoked it. After parking at the car wash, Defendant took out a sex toy and asked to see T.J.'s breasts. Frightened of Defendant, T.J. lifted her shirt and Defendant touched her breasts. Defendant then took T.J. home.
Defendant was charged with first-degree kidnapping, statutory rape of a person who was fourteen years old, sexual offense of a person who was fourteen years old, and taking indecent liberties with a child. Defendant was tried before a jury on 7 April 2014 in Wake County Superior Court, and was found guilty of attempted statutory rape, sexual offense, indecent liberties with a child, and first-degree kidnapping. Defendant received a sentence of 157 to 248 months' imprisonment for attempted statutory rape, 240 to 348 months' imprisonment for the consolidated charges of sexual offense and indecent liberties with a child, and 58 to 130 months' imprisonment for the charge of first-degree kidnapping. The trial court ordered Defendant to register as a sex offender. Defendant appeals.
Defendant argues: (1) the trial court erred in admitting 404(b) evidence regarding M.U. and T.J. because the evidence was not sufficiently similar to the present case and its prejudicial effect outweighed its probative value; (2) the trial court erred in denying Defendant's motion to exclude language in a DNA report regarding "insufficient quality and/or quantity[;]" (3) the indictment for first-degree kidnapping contained a fatal variance by omitting language referring to parent or guardian consent; (4) the trial court lacked jurisdiction because the crimes occurred in Johnston County and Defendant was indicted by a grand jury in Wake County; and (5) the consecutive sentences for sexual offense and kidnapping violated double jeopardy, as the sexual offense was used to raise kidnapping to first-degree kidnapping.
II. Admission of Rule 404(b) Evidence
Defendant first contends the trial court erred in admitting testimony of M.U. and T.J. because their testimony was not sufficiently similar and its probative value was outweighed by its prejudicial effect. Defendant challenges the trial court's admissibility ruling as to the evidence's relevancy under N.C. Gen.Stat. § 8C-1, Rule 404(b), and its prejudicial effect under N.C. Gen.Stat. § 8C-1, Rule 403. We disagree.
Ordinarily, "[w]hen the trial court has made findings of fact and conclusions of law to support its 404(b) ruling, as it did here, we look to whether the evidence supports the findings and whether the findings support the conclusions." State v. Beckelheimer,366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). "We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion." Id.
However, to assess either challenge, a defendant must properly preserve the issue for appeal by making a timely objection at trial. See State v. Thibodeaux,352 N.C. 570, 577, 532 S.E.2d 797, 803 (2000), cert. denied,531 U.S. 1155, 148 L.Ed.2d 976 (2001) ; see alsoN.C.R.App. P. 10(b)(1). "To be timely, an objection to the admission of evidence must be made at the time it is actually introduced at trial." State v. Ray,364 N.C. 272, 277, 697 S.E.2d 319, 322 (2010) (internal quotation marks omitted). A defendant's objection "must be contemporaneous with the time such testimony is offered into evidence." Id.Thus, any objection made before the actual presentation of evidence at trial will not suffice to preserve the issue on appeal. See id.For example, " '[a] motion in limineis insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial.' " State v. Tutt,171 N.C.App. 518, 520, 615 S.E.2d 688, 690 (2005) (quoting State v. Hayes,350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999) ).
Alternatively, when a defendant fails to preserve an error for review, a defendant may challenge the admission of evidence under a standard of plain error. See State v. Flaugher,214 N.C.App. 370, 376, 713 S.E.2d 576, 582-83 (2011) ("[The plain error rule] 'is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamentalerror, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " (quoting State v. Odom,307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) )). To assert the standard, the brief must specifically and distinctly contend plain error as the basis for appeal. SeeN.C.R.App. P. 10(a)(4) ; see also State v. Lawrence,365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012).
In this case, Defendant challenged the admission of 404(b) evidence regarding both M.U. and T.J. during a preliminary hearing. Defendant did not renew his 404(b) objection until his counsel began cross-examining T.J., after M.U. had already testified, and after T.J. had testified under direct examination by the State. Therefore, we conclude Defendant's non-specific objection-made more than halfway through T.J.'s testimony-was insufficient to preserve this issue on appeal as to both M.U.'s and T.J.'s challenged testimony. Additionally, as Defendant does not allege plain error in his brief, we will not undertake any analysis under that standard.
Nonetheless, assuming arguendothat Defendant's objection was sufficient to preserve his challenge to T.J.'s testimony because he objected during the latter portion of her testimony, we find no error. First, although T.J.'s testimony was inadmissible as proof of Defendant's character, it could be offered for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. Gen.Stat. § 8C-1, Rule 404(b) (2013). Furthermore, Rule 404(b) is a rule of inclusion, see State v. Patterson,149 N.C.App. 354, 362, 561 S .E.2d 321, 326 (2002), and "North Carolina's appellate courts have been markedly liberal in admitting evidence of similar sex offenses to show one of the purposes enumerated in Rule 404(b)." State v. Brothers,151 N.C.App. 71, 76, 564 S.E.2d 603, 607 (2002) (internal quotation marks omitted), appeal dismissed and disc. review denied,356 N.C. 681, 577 S.E.2d 895 (2003).
Despite such a liberal standard, there are two limiting factors: (1) sufficient similarity and (2) temporal proximity. See id.The trial court uses these factors to determine the probative value of Rule 404(b) evidence. See id.Offenses more similar and closer in temporal proximity indicate higher levels of probative value. See id.("When the features of the earlier act are dissimilar from those of the offense with which the defendant is currently charged, such evidence lacks probative value. When otherwise similar offenses are distanced by significant stretches of time, commonalities become less striking, and the probative value of the analogy attaches less to the acts than to the character of the actor."). Additionally, these factors operate together. Thus, when past acts occurred in a distant time, the requirement for similarity is heightened. State v. Webb,197 N.C.App. 619, 623, 682 S.E.2d 393, 395 (2009). Sufficient similarity does not require "unique and bizarre" facts in each offense, Beckelheimer,366 N.C. at 131, 726 S.E.2d at 159, but "rather, the incidents need only share some unusual facts that go to a purpose other than propensity." Id.at 132, 726 S.E.2d at 160 (internal quotation marks omitted).
To evaluate substantial similarity, trial courts consider the age, gender, and race of the alleged victims, as well as the location of the occurrences, and how they occurred. Compare id.at 131, 726 S.E.2d at 159 (holding that a one-year age difference between two young male cousins, the act occurred in each boy's bedroom while playing video games, and pretending to be asleep while touching each of the boys inappropriately, as well as performing oral sex, all supported a finding of substantial similarity), with State v. Davis,222 N.C.App. 562, 568, 731 S.E.2d 236, 241 (2012) (rejecting lower court's holding of substantial similarity because "apart from the fact that anal intercourse was involved, the acts bore no resemblance to each other, involving different genders, radically different ages, different relationships between the parties, and different types of force").
T.J.'s testimony was sufficiently similar to J.D.E.'s testimony for admission under Rule 404(b) to demonstrate motive, opportunity, intent, common plan, and lack of consent. T.J. and J.D.E. shared commonalities, as they were both female, African American, and adolescents between the ages of fourteen to sixteen. The location of both occurrences involved the same ice cream truck, as identified by both T.J. and J.D.E., as well as a remote self-service car wash. The offenses committed by Defendant were similar in that he showed sex toys to T.J. and J.D.E. and asked both T.J. and J.D.E. to lift their shirts and then fondled their breasts. While operating his ice cream business, Defendant gained access to T.J. and J.D.E. in their neighborhoods and offered both jobs as a means to get them into his ice cream truck. Finally, in each instance, Defendant also offered both T.J. and J.D.E. marijuana products.
With respect to temporal proximity, there is no brightline rule, and therefore, each case requires analysis of the individual circumstances. See State v. Maready,362 N.C. 614, 624, 669 S.E.2d 564, 570 (2008). However, our Courts have determined: (1) higher levels of similarity allow for longer periods of time between events; similar acts performed repeatedly over a period of years goes toward proving a plan; and (3) certain occurrences "may toll the length of time for remoteness purposes, if the defendant has been involuntarily prevented from continuing to engage in the relevant conduct." State v. Gray,210 N.C.App. 493, 507, 709 S .E.2d 477, 488 (2011), supersedeas and disc. review denied,365 N .C. 555, 723 S.E.2d 540 (2012).
In the present case, there was a two-year period between T.J.'s and J.D.E.'s incidents. However, other cases in which the Courts have determined there existed substantially similar circumstances between incidents have allowed for an even greater gap in time. See Beckelheimer,366 N.C. at 129, 133, 726 S.E.2d at 158, 160 (admitting evidence of prior acts occurring ten to twelve years in past); State v. Carter,338 N.C. 569, 588-89, 451 S.E.2d 157, 167-68 (1994) (affirming conviction of assault where State presented evidence of prior assault eight years before), cert. denied,515 U.S. 1107, 132 L.Ed.2d 263 (1995).
Having determined the trial court properly admitted the testimony evidence from T.J. under Rule 404(b), we next consider Rule 403's balancing test to determine if the evidence's probative value outweighed its prejudice. SeeN.C. Gen.Stat. § 8C-1, Rule 403 (2013). The trial court has discretion to exclude evidence under Rule 403, and we review such determinations under an abuse of discretion standard. See State v. Badgett,361 N.C. 234, 245, 644 S.E.2d 206, 212-13, cert. denied,552 U.S. 997, 169 L.Ed.2d 351 (2007). A trial court's ruling will stand unless the ruling " 'is manifestly unsupported by reason or is so arbitrary it could not have been the result of a reasoned decision.' " Id.(quoting State v. Syriani,333 N.C. 350, 379, 428 S.E.2d 118, 133, cert. denied,510 U.S. 948, 126 L.Ed.2d 341 (1993) ).
There is no evidence in this case that the trial court's decision was unfairly prejudicial. First, during the 404(b) hearing, the trial court appropriately determined that the admitted testimony was sufficiently similar and close in time to this case. Secondly, the trial court instructed the jury on the use of evidence of prior bad acts, specifically the prohibition on using it for proving Defendant's character or propensity. See State v. Hyatt,355 N.C. 642, 662, 566 S.E.2d 61, 74-75 (2002) (rejecting the defendant's argument that there was unfair prejudice under Rule 403 because the trial court provided clear instructions to jury about the evidence's proper purpose), cert. denied,537 U.S. 1133, 154 L.Ed.2d 823 (2003). Finally, "out of an abundance of caution," the trial court denied admission of the testimony of T.J.'s sister, who was an additional 404(b) witness for the State. Thus, the trial court carefully considered the evidence, and we conclude the record shows the trial court's decision was not an unreasoned or arbitrary decision. Therefore, we overrule this issue.
III. Admission of Full DNA Report/Testimony
Defendant next challenges the trial court's failure to redact language from the SBI's DNA report, as well as the SBI agent's accompanying testimony. Specifically, Defendant purports to challenge the relevancy of the evidence under N.C. Gen.Stat. § 8C-1, Rule 401. However, Defendant did not raise this challenge during trial and he did not properly preserve the issue for appeal. Therefore, we decline to review his challenge to this evidence under Rule 401. See Wood v. Weldon,160 N.C.App. 697, 699, 586 S.E.2d 801, 803 (2003) ( " '[T]he law does not permit parties to swap horses between courts in order to get a better mount.' " (quoting Weil v. Herring,207 N.C. 6, 10, 175 S.E. 836, 838 (1934) )), disc. review denied,358 N.C. 550, 600 S.E.2d 469 (2004). Nevertheless, Defendant also challenges the evidence under N.C. Gen.Stat. § 8C-1, Rule 403, contending that the language "insufficient quantity and/or quality," referring to the DNA sample taken from J.D.E.'s underwear, created an "undue tendency to suggest a decision on an improper basis." Again, we disagree.
A trial court may exclude relevant evidence if it creates unfair prejudice. State v. DeLeonardo,315 N.C. 762, 772, 340 S.E.2d 350, 357 (1986). "Unfair prejudice, as used in Rule 403, means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." Id.(internal quotation marks omitted). However, excluding relevant evidence "is a decision within the trial court's discretion and will remain undisturbed on appeal absent a showing that an abuse of discretion occurred." State v. Thorne,173 N.C.App. 393, 399, 618 S.E.2d 790, 795 (2005). Moreover, before ordering a new trial, "a defendant has the burden of showing that there was a reasonable possibility that a different result would have been reached at trial if such error had not occurred." State v. Hueto,195 N.C.App. 67, 72, 671 S.E.2d 62, 65 (2009) (internal quotation marks omitted).
There is no evidence in the record that the trial court abused its discretion in admitting the DNA report and testimony in its entirety. In fact, during the hearing on Defendant's motion in limine,the trial court ordered a voir direof the SBI agent to ensure the agent did not testify outside the scope of what the court was admitting. During voir dire,the trial court carefully analyzed the challenged language in the report, determining that "truthfully [the evidence] cuts both ways." Finally, even if the admission constituted error, Defendant "has failed to meet his burden of showing that a reasonable possibility exists, that had the evidence ... not been admitted, a different result would have been reached at his trial." See DeLeonardo,315 N.C. at 772, 340 S.E.2d at 357. Accordingly, we overrule this issue.
IV. Challenges to Indictment
Defendant next contends there was a fatal variance between the indictment and the court's charge to the jury with respect to the first-degree kidnapping offense. Defendant asserts that the court's instruction to the jury on the charge of first-degree kidnapping referenced whether Defendant acted without the consent of a parent or legal guardian, but that the indictment for the first-degree kidnapping offense referenced whether Defendant acted without J.D.E.'s consent. While Defendant did not object to the indictment variance at trial, " 'when an indictment is alleged to be facially invalid, thereby depriving the trial court of its jurisdiction, it may be challenged at any time, notwithstanding a defendant's failure to contest its validity in the trial court.' " State v. Tollison,190 N.C.App. 552, 555, 660 S.E.2d 647, 650 (2008) (quoting State v. Call,353 N.C. 400, 429, 545 S.E.2d 190, 208, cert. denied,534 U.S. 1046, 151 L.Ed.2d 548 (2001) ). Furthermore, "[a] party may not waive jurisdiction and a court has inherent power to inquire into, and determine, whether it has jurisdiction." Reece v. Forga,138 N.C.App. 703, 704, 531 S.E.2d 881, 882 (citation omitted), disc. review denied,352 N.C. 676, 545 S.E.2d 428 (2000). Sufficiency of an indictment and jurisdictional issues are questions of law and are reviewed de novo. See State v. Sturdivant,304 N.C. 293, 308, 283 S.E.2d 719, 729 (1981).
Generally, an indictment's purpose includes the following:
(1) such certainty in the statement of the accusation as will identify the offense with which the accused is sought to be charged; (2) to protect the accused from being twice put in jeopardy for the same offense; (3) to enable the accused to prepare for trial, and (4) to enable the court, on conviction or plea of nolo contendere or guiltyto pronounce sentence according to the rights of the case.
State v. Greer,238 N.C. 325, 327, 77 S.E.2d 917, 919 (1953). An indictment is "sufficient if it charges the substance of the offense, puts the defendant on notice of the crime, and alleges all essential elements of the crime." State v. Bollinger,192 N.C.App. 241, 246, 665 S.E.2d 136, 139 (2008), aff'd per curiam,363 N.C. 251, 675 S.E.2d 333 (2009).
" 'In order for a variance in an indictment to warrant reversal, the variance must be material. A variance is not material, and is therefore not fatal, if it does not involve an essential element of the crime charged.' " Tollison,190 N.C.App. at 556, 660 S.E.2d at 650 (quoting State v. Jones,188 N.C.App. 562, 565, 655 S.E.2d 915, 917 (2008) ). Therefore, "it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment." State v. Smith,162 N.C.App. 46, 50, 589 S.E.2d 739, 742 (2004) (internal quotation marks omitted). While the indictment must articulate every element of the crime charged, "there is no requirement that an indictment must follow the precise language of the statute provided that the pleading charges facts which are sufficient to enable the indictment to fulfill its essential purposes." State v. Hunter,299 N.C. 29, 41, 261 S.E.2d 189, 197 (1980) (holding an indictment sufficient when it "charge[d] each of the constituent elements of the crime of kidnapping in such a way that [the] defendant was fairly apprised of the [S]tate's accusations against him"). Finally, "[N.C. Gen.Stat. § ] 15-153 provides that an indictment shall not be quashed by reason of any informality or refinement if it accurately expresses the criminal charge in plain, intelligible, and explicit language sufficient to permit the court to render judgment upon conviction." Sturdivant,304 N.C. at 311, 283 S.E.2d at 731 (internal quotation marks omitted).
Our Supreme Court has held that the "statutory definition of kidnapping focuses on the unlawful confinement, restraint or removal of a human being and that the omission of an explicitreference to the victim's lack of consent thereto does not constitute a failure to include an essential element of the offense in the indictment."Id.at 309, 283 S.E.2d at 730. Consent is merely a defense to the crime of kidnapping. Id.at 310, 283 S.E.2d at 731. "It was established long ago that an indictment need not negate a defense to the stated crime; rather, it is left to the defendant to show his defenses at trial." Id.
In this case, while the State could have left consent out of the indictment, it included the following language:
THE GRAND JURORS FOR THE STATE upon their oath present that from on or about the 16th day of August 2012, in the county named above, the defendant named above unlawfully, willfully and feloniously did kidnap J.D.E., a person who under the age of sixteen years, by confining, restraining and removing her from one place to another without her consentfor the purpose of facilitating the commission of a felony, to wit: a sexual assault. During the commission of the offense J.D.E. was sexually assaulted. This act was done in violation of [N.C. Gen.Stat.] § 14-39.
(Emphasis added.) The distinction Defendant tries to establish merely refers to J.D.E.'s age, as well as the form consent may take, and neither are essential elements of the crime of kidnapping. See Sturdivant,304 N.C. at 309, 283 S.E.2d at 730 ; cf. Hunter,299 N.C. at 37-38, 261 S.E.2d at 195 (holding age is an essential element of the crime of rape, but not an essential element of the indictment). At trial, the State met its burden in presenting evidence through the testimony of J.D.E. and her mother that, at the time Defendant asked J.D.E. to go with him, he did not receive consent from any parent or legal guardian.
Therefore, the corrections provided by the trial court did not "substantially alter the charge set forth in the indictment." State v. Snyder,343 N.C. 61, 65, 468 S.E.2d 221, 224 (1996) (internal quotation marks omitted). Because the indictment provided notice to Defendant of the essential elements of the offense, tracked the language of the statute, and consent is not an essential element of first-degree kidnapping, we conclude this language did not constitute a fatal variance.
V. Venue and Jurisdiction
Defendant's fourth contention is the trial court lacked "jurisdiction" to hear his case because the crimes occurred in Johnston County-not in Wake County. Defendant conflates the terms venue and jurisdiction, in that his analysis challenges venue and not subject matter jurisdiction.
Jurisdiction and venue are distinct concepts. Concerns over jurisdiction are appropriate to answer "(i) whether North Carolina courts can hear the case; and (ii) which division of the General Court of Justice must first try the matter." State v. Carter,96 N.C.App. 611, 613, 386 S.E.2d 620, 621 (1989) (citation omitted), disc. review denied,326 N.C. 365, 389 S.E.2d 817 (1990). Alternatively, venue does not answer whether the "State has the power to prosecute the defendant, but rather wherethe State may prosecute him." Id.
"Venue for pretrial and trial proceedings in district court of cases within the original jurisdiction of the district court lies in the county where the charged offense occurred," N.C. Gen.Stat. § 15A-131 (2013), and counties may have concurrent venue where the "charged offense occurred in more than one county." N.C. Gen.Stat. § 15A-132 (2013). Our Superior Courts have statewide jurisdiction over criminal matters. See State v. Bolt,81 N.C.App. 133, 135, 344 S.E.2d 51, 53 (1986). However, "the place for returning a presentment or indictment is a matter of venue and not jurisdiction." N.C. Gen.Stat. § 15A-631 (2013). "Questions of venue however are waived by the failure to make a pretrial motion, even if the problem of venue arises from a variance between the indictment and the proof at trial." State v. Brown,85 N.C.App. 583, 587-88, 355 S.E.2d 225, 229, disc. review denied,320 N.C. 172, 358 S.E.2d 57 (1987). Therefore, regardless of whether venue was proper in Wake County, Defendant has waived his right to appeal the matter by not raising venue in the trial court.
Furthermore, even if the jurisdiction-venue distinction was not dispositive on the issue, the record establishes concurrent venue for Wake and Johnston Counties, as the kidnapping began in Wake, continued into Johnston, and returned to Wake. See State v. White,127 N.C.App. 565, 571, 492 S.E.2d 48, 51 (1997) ("We therefore hold that the offense of kidnapping under N.C. Gen.Stat. § 14-39 is a single continuing offense, lasting from the time of the initial unlawful confinement, restraint or removal until the victim regains his or her free will."). Defendant correctly asserts that, for kidnapping, the moment consent is either given or withdrawn is a crucial tipping point from legal to criminal conduct. See State v. Fulcher,294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). The relevant statute states:
Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodianof such person, shall be guilty of kidnapping[.]
N.C. Gen.Stat. § 14-39(a) (2013) (emphasis added). As statutorily defined, a child under the age of sixteen cannot provide consent. Thus, fourteen-year-old J.D.E. could not give consent to leave her neighborhood or, for that matter, later withdraw consent. Accordingly, the kidnapping began at the moment Defendant left Wake County with J.D.E. without obtaining consent from a parent or legal guardian. Since Defendant did not release J.D.E. from his control until they reached Creech Road in Garner, which was within Wake County, and a kidnapping continues through the point where the victim regains free will, see White,127 N.C.App. at 571, 492 S .E.2d at 51, the record further establishes concurrent venue in Wake and Johnston Counties. Therefore, we overrule this issue.
VI. First-degree Kidnapping Sentencing
Finally, Defendant contends, and the State concedes, his consecutive sentences for sex offenses and first-degree kidnapping were in error because the sex offenses raised the kidnapping to first-degree. In State v. Freeland,316 N.C. 13, 340 S.E.2d 35 (1986), aff'd per curiam after remand,321 N.C. 115, 361 S.E.2d 560 (1987), our Supreme Court overturned a similar conviction where the defendant received separate sentences because the sex offenses charged were necessary elements of first-degree kidnapping. Id.at 21, 340 S.E.2d at 39. Specifically, our Supreme Court determined that, if the statute has "authorized cumulative punishment for the same conduct under two statutes[,] 'the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.' " Id.(quoting Missouri v. Hunter,459 U.S. 359, 369, 74 L.Ed.2d 535, 544 (1983) ). However, if there is no provision for cumulative sentencing, only one statutory punishment may be used. See id.In this case, as in Freeland,there was no such provision. Accordingly, we remand for resentencing.
NO ERROR IN PART; REMANDED FOR RESENTENCING.
Judges GEER and TYSON concur.
Report per Rule 30(e).
Opinion
Appeal by Defendant from judgments entered 11 April 2014 by Judge Carl R. Fox in Superior Court, Wake County. Heard in the Court of Appeals 18 May 2015.