2005 UT 40

**STATE of Utah, Plaintiff and Appellee,**

v.

**Bryan Keith TAYLOR, Defendant and Appellant.**

**No. 20030566.**

Supreme Court of Utah.

June 28, 2005.

Mark L. Shurtleff, Att'y Gen., Laura B. Dupaix, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Lisa Remal, Lori J. Seppi, Salt Lake City, for defendant.

NEHRING, Justice:

¶ 1 Bryan Keith Taylor appeals his conviction for rape of a child. He challenges the trial court's refusal to grant him a continuance after the State amended its information. He also challenges what he claims to be the trial court's erroneous comments on the evidence in its jury instruction about victim consent. We affirm.

1. The latter charge was eventually dropped.

## BACKGROUND

¶ 2 Mr. Taylor was accused of raping a six-year-old girl that he was babysitting. He was charged with one count each of rape of a child, sodomy upon a child, and sexual abuse of a child.[1] The State's information alleged that the charged offenses occurred "on or about November 1, 2002, through January 9, 2003."

¶ 3 At trial, the young victim described in detail the alleged rape and the circumstances surrounding it. She explained that she and Mr. Taylor had been in the living room and Mr. Taylor was sitting on the couch. She stated that Mr. Taylor removed his pants and underwear, as well as her underwear but not her nightgown. She explained that he offered her "half a dollar" to "suck on his private," which she described as tasting like urine. She then explained that he picked her up and put her "on him," sitting her bare genitalia on his. The State also introduced as exhibits two pictures that the victim drew of an erect penis and two notes that she had written to her mother. The notes read, with corrected spelling, "Bryan told me to suck on his private and I did it" and "[He] told me to get on him."

¶ 4 During her testimony, she was asked to pinpoint the dates and times the acts occurred. Her answers were imprecise. After both parties had rested their cases, the State moved to amend its information to expand the range of dates for the offenses by pushing back in time the scope of the initial criminal conduct to May 1, 2002.

¶ 5 Mr. Taylor objected to the State's motion to amend its information. He claimed that the State had failed to give him any notice of the change. His objection to the amended information did not, however, include a request for a continuance. The State noted that a continuance was the proper remedy to notice-based prejudice but insisted that a continuance was unnecessary because the new date emerged from evidence introduced during the course of the trial and, although the change was "last-minute," it

would not prejudice Mr. Taylor. The trial court agreed, declined to continue the trial, and allowed the State to amend its information. The court reasoned that because Mr. Taylor insisted that he never abused the girl, a change in the time frame of the alleged abuse would not violate Mr. Taylor's substantial rights.

¶ 6 The trial court also took up proposed jury instructions. The State's proposed victim consent instruction stated, "A child under the age of fourteen cannot consent to sexual activity. In other words, in this case you should not consider whether or not a child willingly participated in sex acts, voiced any objection to such acts, or struggled in any way." Mr. Taylor's counsel objected to the second sentence of this jury instruction, saying, "I certainly have no objection to quoting the statute about consent or lack of consent and how that relates to a child, but I think this goes beyond that and becomes a comment." After some argument on the matter, the trial court denied Mr. Taylor's objection and adopted the consent instruction. The jury convicted Mr. Taylor of both charges. Mr. Taylor appealed.

## ANALYSIS

### I. DENIAL OF A CONTINUANCE AFTER THE STATE'S MOTION TO AMEND THE INFORMATION

¶ 7 Mr. Taylor challenges the trial court's refusal to grant him a continuance to meet the State's motion to amend its information. He argues that the denial of a continuance violated his due process rights under the Utah Constitution[2] and rule 4(d) of the Utah Rules of Criminal Procedure. The State argues this issue was not preserved because Mr. Taylor's counsel did not specifically request a continuance. However, without invitation, the trial court turned away the option of continuing the trial to permit Mr.

Taylor to adjust his defense to meet the amended date. In light of these circumstances, we conclude that the issue was properly preserved.

¶ 8 A trial court's decision to grant a continuance is a matter of discretion, and we review the decision for abuse of that discretion. *Seel v. Van Der Veur*, 971 P.2d 924, 926 (Utah 1998). An abuse of discretion occurs when a trial court denies a continuance and the resulting prejudice affects the substantial rights of the defendant, such that a "review of the record persuades the court that without the error there was 'a reasonable likelihood of a more favorable result for the defendant.'" *State v. Knight*, 734 P.2d 913, 919 (Utah 1987) (quoting *State v. Fontana*, 680 P.2d 1042, 1048 (Utah 1984)); *see also* Utah R.Crim. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded.").

¶ 9 Guided by this standard, we examine whether the amended information denied Mr. Taylor adequate notice to meet the charged offenses. "The right to adequate notice in the Utah Constitution requires the prosecution to state the charge with sufficient specificity to protect the defendant from multiple prosecutions for the same crime and to give notice sufficient for the one charged to prepare a defense." *State v. Wilcox*, 808 P.2d 1028, 1032 (Utah 1991). Beyond requiring a statement of the elements of the offense, however, the test for notice has few rules. It does not, for example, expressly mandate identification of the exact date when an alleged offense occurred. Instead, we require a "weighing of the completeness of the notice and its adequacy for the defendant's purposes against the background of the information legitimately available to the prosecuting authority." *Id.* In other words, "[a]s long as a defendant is sufficiently apprised of the State's evidence

---

2. In relevant part, article I, section 12 of the Utah Constitution states:

    In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to be confronted by the witnesses against him, to

have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, and the right to appeal in all cases.

Utah Const. art. I, § 12.

upon which the charge is based so that the defendant can prepare to meet that case, the constitutional requirement is fulfilled." *Id.* at 1032 n. 1.

¶ 10 We recently had occasion to summarize the information content and communication obligation that the State owes a defendant relating to the nature of the offense with which he is charged. We stated:

> The right of an accused to know the nature of the offense with which he is charged is a fundamental right guaranteed by both our federal and state constitutions. This right is rooted in the recognition that when the government exercises its authority to bring criminal charges against a person and thereby places him at risk of losing his liberty, the accused should be entitled to insist that the crime be defined with such reasonable clarity that he can mount a defense. By requiring that an offense be specifically identified, the right to be apprised of the nature of the crime also reinforces the protection against double jeopardy.
>
> Rule 4 of the Utah Rules of Criminal Procedure gives practical expression to these fundamental rights. It defines the charging documents, describes the scope of their content, provides rules of construction, and, of importance here, sets out the limitations on their amendment. Specifically, rule 4(d) states that "the court may permit an indictment or information to be amended at any time before verdict if no additional or different offense was charged and the substantial rights of the defendant are not prejudiced."

*State v. Nelson–Waggoner,* 2004 UT 29, ¶¶ 17–18, 94 P.3d 186 (quoting Utah R.Crim. P. 4(d)) (footnote and other citations omitted).

¶ 11 In *Nelson–Waggoner,* the defendant challenged the State's attempt to narrow the claimed dates of a rape by amending the information. 2004 UT 29 at ¶ 4, 94 P.3d 186. The defendant argued that his alibi defense would be undermined by the amended information because the alibi testimony covered a period outside the dates for the offense in the amended information. *Id.* at ¶ 19. We turned this argument away. *Id.* at ¶ 21. We held that where a defendant is initially required to defend against a crime potentially committed within a range of possible dates, and the amended information refines the field of dates within the initial range, the defendant's defense is not prejudiced. *Id.*

¶ 12 We have also acknowledged that in child sexual abuse prosecutions, identifying the specific date, time, or place of the offense is often difficult owing to the inability of young victims to provide this information. Responding to the realities of cognitive development, we have been less demanding of exact times and dates when young children are involved. We have noted that

> [i]f we were to hold that ... no offense could be charged because the alleged victim is too young to testify with certainty concerning the time, dates, or places where the abuse occurred, we would leave the youngest and most vulnerable children with no legal protection. An abuser could escape prosecution merely by claiming that the child's inability to remember the exact dates and places of the abuse impaired the abuser's ability to prepare an alibi defense.

*Wilcox,* 808 P.2d at 1033.[3] We acknowledge that by permitting a prosecution involving a child victim to proceed despite uncertainty over the date, time, and place of the alleged offense, we are balancing the interest of protecting vulnerable and cognitively limited children from exploitation against the interest of an accused to mount a defense. This policy-driven balance cannot be struck using a categorical rule; it will always have a thumb resting on one side of the fulcrum or the other.

¶ 13 Here, Mr. Taylor claims that his substantive rights were prejudiced when the trial court declined to continue the trial and allowed the State to expand the possible

**3.** This is not to say we are unconcerned about the precision of charging documents. Where specificity of dates, times, or places can be obtained, we encourage it. In *McNair v. Hayward,* 666 P.2d 321 (Utah 1983), a case involving only adult testimony, we held that the seventeen-day disparity between the charging documents and the evidence presented at trial exceeded the one to three days grace period generally included within the phrase "on or about." *Id.* at 326–27.

dates for his alleged conduct. According to Mr. Taylor, his rights were prejudiced because without a continuance he was generally rendered unable to impeach the victim's testimony based on her inconsistent recollection of dates. In particular, he argued, he was unable to establish that because he first began babysitting the victim in September 2002, he could not, therefore, have abused her during a four-month span of the period the State claimed the abuse occurred.

¶ 14 The victim testified that Mr. Taylor abused her before Christmas, before Halloween, and before her August 2 birthday. She also testified that at the time of the abuse, Mr. Taylor was watching football on television. Mr. Taylor argues that had he known she would testify that the abuse took place before August 2, he would have shown that no abuse could possibly have occurred before "September or October." He argues that a continuance would have enabled him to assemble evidence to show that he did not babysit the victim before September, that he worked the night shift before September, and that he could not have been watching football on television before September, because football is broadcast only in the fall. Mr. Taylor argues that he would have used these inconsistencies to establish that the victim's memory generally was not credible. Her confusion over the dates of the abuse could, according to Mr. Taylor, persuade the jury that reasonable doubt existed as to whether the victim was abused at all.

¶ 15 Echoing our earlier observations about the unreasonableness of expecting children to recount dates with a precision out of step with their cognitive development, we have "recognize[d] that children are often not able to identify with a high degree of reliability, and sometimes not at all, when an event in the past took place." *State v. Robbins*, 709 P.2d 771, 773 (Utah 1985). That was certainly the case here. Mr. Taylor's attorney attempted to expose the victim's immature temporal understanding by asking her various time-sensitive questions. Her uncertain grasp of time is illustrated by the following conversation:

> Defense Attorney: [D]o you know the seasons of the year?

> Victim: Yeah.

> Defense Attorney: Can you tell me what they are?

> Victim: Yeah.

> Defense Attorney: What are they?

> Victim: Valentines, Easter, Christmas, Mother's Day.

> Defense Attorney: Well, those sound like holidays. Are those holidays?

> Victim: Yeah.

> Defense Attorney: Okay. So let me tell you what I think the seasons are and you tell me if I'm right. Spring, summer, winter, and fall. Are those seasons?

> Victim: Yeah.

> Defense Attorney: Now, can you remember what season of the year it was when [the abuse] happened?

> Victim: Yeah.

> Defense Attorney: What do you remember that being?

> Victim: Summer.

> Defense Attorney: Can you remember if it was hot out or cold out when this happened?

> Victim: Cold.

¶ 16 It is clear from this testimony that the victim's understanding of time was nascent, at best. She was incapable of anchoring her graphic and detailed recollection of the events of her abuse to calendar landmarks. It is indeed difficult for us to imagine what evidence Mr. Taylor could have produced that would have shown the victim to be less calendar-savvy than that already in the trial record. We do not, however, share Mr. Taylor's belief that the victim's tenuous attachment to time could reasonably have shaken the jury's conviction that the victim was in fact abused and that Mr. Taylor was the abuser.

¶ 17 The record presented the jury with ample evidence from which it could conclude that the victim was incapable of comprehending or communicating the "when" of the abuse. That the jury nevertheless convicted Mr. Taylor is explained less by his ability to reinforce the victim's fragile grip on time than by the convincing character of the "who" and "what" components of her testi-

mony. In assessing her credibility regarding the abuse itself, the jury clearly did not rely on her ability to pinpoint a specific date.

¶ 18 Next, we turn to Mr. Taylor's contention that without a continuance he was unable to show that the abuse could not have occurred anytime before September because he did not babysit the victim any time before then. This claim bears on a defense theory that shares features with an alibi defense and is, therefore, different from his defense that the victim's testimony was not credible. It is a defense that, like an alibi, endeavors to place Mr. Taylor at a location other than the site of the abuse. It is undisputed, however, that Mr. Taylor was at the site of the abuse under circumstances that provided him an opportunity to rape and sodomize the victim. The State alleged that Mr. Taylor committed the abuse while he was babysitting the victim at her home. Mr. Taylor admits that he did babysit the victim in her home on occasion, but denies abusing her. Even if Mr. Taylor could prove that it was impossible to abuse the victim on particular dates or even during extended spans of time, his defense would not be compromised by the expanded range of dates because he admittedly babysat the victim during the relevant period, and because his core defense—"I didn't do it"—is not time-sensitive.

¶ 19 The trial court reasoned that whether the abuse occurred in September or January was immaterial to Mr. Taylor's argument. From the bench, the trial court explained:
[I]t's Mr. Taylor's testimony from the stand that [the abuse] never happened, not that it didn't happen in December or November, but it never happened. And these dates establish his residency were May 15 through January 9, and that does conform with the testimony, so ... I can't find any bias or prejudice to him by allowing the amendment, no substantial right ... that's been violated.

We agree; Mr. Taylor's theory of the case was not affected.[4] His theory, that the victim's testimony of the fact of abuse could not be believed because she could not reliably say when the abuse occurred, remained the same after the information was amended. What Mr. Taylor sought was an opportunity to make the victim's testimony about the dates of the abuse appear even more frail than it already appeared to be. In our view, this would have been an enterprise with negligible returns. We find it implausible that a jury that convicted Mr. Taylor in the face of the victim's inability to link events to time would have changed its mind after being presented with an additional helping of what it already knew. We therefore conclude that the outcome would not have been different if the continuance had been granted, and Mr. Taylor's substantial rights were not affected.

## II. THE JURY INSTRUCTION

■ ¶ 20 Secondly, Mr. Taylor contends that the trial court erred by allowing the State's jury instructions to be submitted as they were written. Mr. Taylor argues that part of the jury instructions constituted a comment on the validity of the evidence and the victim's credibility, and thus biased the jury. We disagree.[5] The trial court's instructions neither commented on the evidence, nor in any way prejudiced the jury's verdict.

¶ 21 The instruction that Mr. Taylor finds offensive reads: "A child under the age of fourteen cannot consent to sexual activity. In other words, in this case you should not consider whether or not a child willingly participated in sex acts, voiced any objection to such acts, or struggled in any way." Mr. Taylor argues that this sentence improperly comments on the victim's credibility. In particular, he points to the phrase "in this case" as suggesting to the jury that it was not

---

**4.** We also find it significant that the victim's testimony at the preliminary hearing reasonably alerted Mr. Taylor to her inability to pinpoint precise dates of the alleged abuse. In her preliminary testimony, the victim responded to the attorneys' attempts to pinpoint dates by describing the date of the offense as before Christmas, before her August 2 birthday, while Mr. Taylor was watching football, during the spring, and when it was cold outside.

**5.** The State argues that Mr. Taylor failed to preserve this issue. However, as the trial court specifically addressed the sentences in question, we consider them adequately preserved and accordingly take them up.

allowed to question the victim's testimony in any way, including its credibility. In his brief to this court, Mr. Taylor writes, "By instructing the jury not to consider [the victim's] testimony about whether she consented, objected or struggled 'in any way,' the trial court erroneously instructed the jury that it could not consider relevant aspects of [the victim's] testimony to determine whether her testimony was credible."

¶ 22 Mr. Taylor correctly asserts that a trial court may not comment on the evidence or the credibility of a witness's testimony. Utah R.Crim. P. 19(f) ("The court shall not comment on the evidence in the case, and if the court refers to any of the evidence, it shall instruct the jury that they are the exclusive judges of all questions of fact."); *see also State v. Larson*, 775 P.2d 415, 419 (Utah 1989); *State v. Adams*, 583 P.2d 89, 91 (Utah 1978). The reason for this rule is clear: "It is the sole and exclusive province of the jury to determine the facts in all criminal cases, whether the evidence offered by the State is weak or strong, is in conflict or is not controverted." *State v. Green*, 78 Utah 580, 6 P.2d 177, 181 (1931).

¶ 23 However, we do not read the jury instruction the same way that Mr. Taylor does—that is, with the phrase "in this case" commenting on the nature of this particular victim's testimony. Instead, we think the initial phrase, "in other words," clearly indicates that the second sentence is intended to clarify the concept of consent presented in the first sentence, which correctly states the law in Utah. The second sentence elaborates on this statement of law using concrete examples of conduct that might, under other circumstances, suggest consent or its absence, all to the end of providing context to the abstract legal principle that children are not capable of consenting to sexual activity. It cannot reasonably be interpreted as a comment on the victim's credibility.

¶ 24 Mr. Taylor's argument is also flawed because it isolates one sentence in one instruction while disregarding admonitions conveyed by other instructions. We have clearly indicated that "jury instructions must be viewed as a whole rather than in isolated segments." *Christiansen v. Utah Transit*

*Auth.*, 649 P.2d 42, 46 (Utah 1982). The jury instructions in this case included jury instruction number five, which specifically articulated the jury's obligation to consider the credibility of the witnesses and weigh the evidence. Among other things, it stated:

> You may consider such things as the conduct and appearance of the witness while testifying, the witness's apparent frankness or lack of it; the reasonableness or unreasonableness of the testimony; opportunity to observe, ability to understand, capacity to remember and any other common sense yardstick you may wish to apply. You may also consider the witness's motive for testifying, if any, and of course, the interest or lack of interest the witness may have in the outcome of the case.

In light of this instruction, we are confident that the jury was neither confused nor misled concerning its ability to consider the credibility of the victim's testimony.

## CONCLUSION

¶ 25 We affirm the decisions of the trial court both in allowing the State to amend its information and in allowing the jury instructions to be submitted as presented.

¶ 26 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.