2006 UT App 132

**STATE of Utah, in the interest of D.T., a person under eighteen years of age.**

**D.T., Appellant,**

v.

**State of Utah, Appellee.**

No. 20050150–CA.

Court of Appeals of Utah.

April 6, 2006.

Randall W. Richards, Richards Caine & Allen, Ogden, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Joanne C. Slotnik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, P.J., McHUGH and ORME, JJ.

## OPINION

McHUGH, Judge:

¶ 1 D.T., a 15-year-old juvenile, appeals his conviction in juvenile court for sexual abuse of a child younger than fourteen, a second-degree felony if committed by an adult. *See* Utah Code Ann. § 76-5-404.1 (2003). D.T. argues that the evidence was insufficient to convict him of the crime. We affirm.

## BACKGROUND

¶ 2 D.T. met L.T., the victim, at a volleyball tournament in which L.T. and D.T.'s cousin were competing. Twice between February and April 2004, L.T. and D.T. visited the Ogden Athletic Club where they sat in a hot tub with several friends. The jets were on at the time, making visibility beneath the surface impossible.

¶ 3 According to the victim, the first time she and D.T. were in the hot tub, D.T. sat next to her and inserted two or three fingers under her bathing suit and up her vagina. She testified that she told D.T. to "knock it off." He stopped, and L.T. and her friends left the hot tub and the athletic club.

¶ 4 A few months later,[1] L.T. and D.T. were again in the hot tub at the Ogden Athletic Club with a group of friends. This time, D.T. was seated across from L.T. D.T. scooted over so he was positioned in front of her and then touched her upper thigh. She testified that she told him she "didn't like it" and that he responded, "[Y]ou know you like it." L.T. testified that when she started to leave, "he like grabbed me and pushed me and then started to finger me. . . . I told him to stop."

¶ 5 L.T. revealed these incidents to a foster child in the family of her parents' friends, with whom she was staying while her parents were out of town. L.T.'s parents were then told about the incidents and notified the authorities.

¶ 6 A police officer interviewed D.T. The officer testified at trial that D.T. admitted he had been in the hot tub with L.T. and that they had been hugging and kissing. The officer testified that D.T. stated that "he had rubbed [L.T.'s] legs and touched her butt." The officer also testified that D.T. was initially adamant that he had not fingered L.T., but later admitted he had touched L.T.'s genital area on the outside of her swimming suit for about five seconds. The officer informed D.T. that they had to tell D.T.'s mother about the allegations and what D.T. had just admitted. The officer testified that when he began telling D.T.'s mother about the incidents, D.T. changed his story and stated that he may have brushed his hand by L.T.'s vagina but did not keep it there for five seconds.

¶ 7 D.T. also testified at trial. He corroborated that he and L.T. met at a volleyball tournament and that they had been in the hot tub at the Ogden Athletic Club on two occasions. He testified that on the first occasion, he and L.T. had talked, hugged, and kissed while in the hot tub. He denied touching L.T.'s vagina, either inside or outside of her bathing suit, but stated that his hand had brushed up against the front of her upper thigh. He testified that he received permission from L.T. before he did anything like kiss or touch her. He denied that she ever told him to "knock it off." D.T. confirmed that on the second occasion, he was initially sitting across from L.T., but then walked over to her to have a conversation about the movies. He denied touching her at that point or stating anything like "you know you like it." On cross-examination, D.T. conceded that he may have touched L.T.'s buttocks but could not remember for sure whether he did so. He also stated that he felt sexually aroused when he was kissing and touching L.T.

---

1. L.T. turned thirteen on March 2, so she was twelve at the time of the first incident and thirteen at the time of the second incident.

¶ 8 D.T.'s younger brother also testified, stating that he heard L.T. tell D.T., "[S]top because my friends are here." Two other friends who were in the hot tub testified that L.T. and D.T. had been hugging and kissing. One of the friends testified that D.T. later bragged about his. sexual encounters with L.T. and said that he had "pretty much had sex with her." The friend testified: "I remember he was bragging about touching her and stuff. And then he told us after that he didn't do it and he was just trying to be cool." No one who testified remembered hearing D.T. ask L.T. for permission to touch and kiss her.

¶ 9 The juvenile court entered factual findings and concluded beyond a reasonable doubt that D.T. had engaged in sexual abuse of a child. *See* Utah Code Ann. § 76–5–404.1. The court committed him to detention with prior release authorization to a diversion program, 125 hours of community service or a fine of $500, a sexual behavioral risk assessment and therapy as recommended, and no further contact with the victim. D.T. appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 10 When reviewing a juvenile court's decision for sufficiency of the evidence, we must consider all the facts, and all reasonable inferences which may be drawn therefrom, in a light most favorable to the juvenile court's determination, reversing only when it is against the clear weight of the evidence, or if [we] otherwise reach[ ] a definite and firm conviction that a mistake has been made.

*In re V.T.*, 2000 UT App 189,¶ 8, 5 P.3d 1234 (quotations and citations omitted). Furthermore, "[t]o demonstrate that the evidence is insufficient to support [a] verdict, the one challenging the verdict must marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict." *State v. Hopkins*, 1999 UT 98,¶ 14, 989 P.2d 1065 (second alteration in original) (quotations and citation omitted).

2. L.T. testified on cross-examination that the

## ANALYSIS

■ ¶ 11 Utah Code section 76–5–404.1(2) provides that

> [a] person commits sexual abuse of a child if, under circumstances not amounting to rape of a child, object rape of a child, sodomy upon a child, or an attempt to commit any of these offenses, the actor touches the anus, buttocks, or genitalia of any child ... with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.

Utah Code Ann. § 76–5–404.1(2). The State must prove each element of the statute beyond a reasonable doubt. *See In re V.T.*, 2000 UT App 189 at ¶ 9, 5 P.3d 1234; *see also State v. Piep*, 2004 UT App 7,¶ 7, 84 P.3d 850 ("[B]efore we can uphold a conviction it must be supported by a quantum of evidence concerning each element of the crime as charged from which the [factfinder] may base its conclusion of guilt beyond a reasonable doubt." (second alteration in original) (quotations and citations omitted)). The only element of the statute at issue in this appeal is whether D.T. touched L.T.'s buttocks or genitalia.

¶ 12 D.T. argues that the evidence is insufficient because L.T.'s testimony was "disjointed and confused" as to the time frame of the incidents.[2] Furthermore, D.T. argues that the primary evidence of sexual abuse was L.T.'s testimony about where she was touched and that this testimony was insufficient to support the conviction. He asserts that no one else who was in the hot tub at the time of the incidents testified that anything unusual had occurred. Even D.T., however, acknowledges some evidence supporting L.T.'s testimony, including the investigating officer's testimony about D.T.'s admissions and the testimony that D.T. had bragged to his friends about his sexual encounters with L.T. In addition, there was other evidence, summarized above, from which the juvenile court could have found that D.T. sexually abused L.T.

year might have been 2003 or 2004.

¶ 13 As to the contention that L.T.'s testimony was insufficient because she could not remember the precise year the incidents had occurred, we agree with the State that this inconsistency was not material. The only element of the offense at issue was where L.T. had been touched; the State did not need to prove the precise year in which the abuse occurred.[3] *See State v. Marcum,* 750 P.2d 599, 601 (Utah 1988) (noting that under section 76–5–404.1(1), "[t]ime was not an element ... that the State was required to prove"). We also do not believe that this inconsistency raises doubts about the truthfulness of L.T.'s testimony. *Cf. State v. Taylor,* 2005 UT 40,¶ 12, 116 P.3d 360 (stating that in child sex abuse prosecutions, the court has been "less demanding of exact times and dates when young children are involved"). The record reveals that her recollection of the other details of the incidents remained consistent throughout the proceedings.

¶ 14 Moreover, D.T. has failed to demonstrate that the "evidence is insufficient when viewed in the light most favorable to the verdict." *Hopkins,* 1999 UT 98 at ¶ 14, 989 P.2d 1065 (quotations and citation omitted). As the juvenile court acknowledged, "[b]asically this [case] is her testimony against his." The court stated that to reach a conclusion about who was being truthful, it would look at the surrounding circumstances and what the other witnesses and evidence corroborated. The court stated that everything L.T. testified to was supported by other evidence "except exactly what type of touching occurred." The court then explained:

> [L.T.] didn't have any way of engineering that [D.T.] would confess to a police officer that he'd touched her for five [seconds], or she didn't have a way of engineering that a police officer would make that up that he had confessed to having touched her for five seconds. Either way that was out of her control that that kind of a statement would either be made to a police officer.... And yet that, there was corroboration of what she said.
>
> She also would have had to get [D.T.] to make a statement to his friends that he

had in fact touched her and then later claim that it was just made to, to seem cool. But [D.T.] did make a statement to his friend ... that he had touched [L.T.] It's just an amazing [coincidence] to me that he would have said that to his friend just to be cool and completely unconnected she's saying that he did that.

> And then she also, [L.T.] would have had to have arranged it so that [D.T.'s] little brother ... would corroborate her statement that she said to stop. And [D.T.'s brother] ... did recall her making ... that statement. Those things I find are too much of a [coincidence].

¶ 15 The juvenile court's explanation demonstrates that it carefully weighed each piece of evidence and determined beyond a reasonable doubt that L.T. was telling the truth. We cannot say that this conclusion is against the clear weight of the evidence, nor do we have a definite and firm conviction that a mistake was made.

### CONCLUSION

¶ 16 For all of the above reasons, we affirm D.T.'s conviction.

¶ 17 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and GREGORY K. ORME, Judge.

---

**3.** There is no dispute that L.T. was younger than fourteen at the time of each incident and, thus, a "child" as defined by the statute. *See* Utah Code Ann. § 76–5–404.1(1) (2003).