2013 UT App 168

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
DONALD J. PULLMAN,
Defendant and Appellant.

Opinion
No. 20110212-CA
Filed July 5, 2013

Fifth District, Cedar City Department
The Honorable G. Michael Westfall
No. 101500047

J. Bryan Jackson, Attorney for Appellant
John E. Swallow and Ryan D. Tenney, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES GREGORY K. ORME and JAMES Z. DAVIS concurred.

VOROS, Judge:

¶1      Donald J. Pullman appeals from his convictions for one count of sodomy on a child and two counts of aggravated sexual abuse of a child, first degree felonies. *See* Utah Code Ann. §§ 76-5-403.1, -404.1 (LexisNexis 2012).[1] He contends (1) that the evidence presented was insufficient to support his conviction, (2) that the jury was improperly instructed, (3) that a definitional statute is unconstitutionally vague, (4) that the trial court erred in admitting certain evidence, and (5) that his trial counsel was ineffective. We affirm in part and reverse and remand in part.

---

1. Where no changes material to our analysis have occurred, we cite the 2012 version of the Utah Code for the reader's convenience.

BACKGROUND[2]

¶2     Pullman began molesting Victim on her twelfth birthday and continued to do so weekly or biweekly for about a year. Specifically, Victim testified that Pullman regularly grabbed her breasts and buttocks, both over and under her clothing. On one occasion, Pullman attempted to engage in anal sex with Victim. At trial, Pullman's defense was that these events did not occur and that Victim had made up the events to retaliate against him. In fact, a defense witness testified that she asked Victim "why she was doing this" and that Victim responded that Pullman had not allowed her to attend a party and had called her a "slut."

¶3     Pullman was charged with one count of sodomy on a child and two counts of aggravated sexual abuse of a child, all first degree felonies. The jury convicted Pullman on all counts. He appeals.

ISSUES AND STANDARDS OF REVIEW

¶4     First, Pullman contends that the evidence presented to the jury was insufficient to support his convictions. In addressing an insufficiency of the evidence claim, "we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict [and] reverse . . . only when the evidence, so viewed, is sufficiently inconclusive . . . that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *State v. Hamilton*, 827 P.2d 232, 236 (Utah 1992) (citation and internal quotation marks omitted).

---

2. We view the facts in the light most favorable to the jury's verdict and recite them accordingly, except as necessary to fully understand the issues on appeal. *See State v. Martin*, 2002 UT 34, ¶ 2 n.1, 44 P.3d 805.

¶5    Second, Pullman contends that a manifest injustice occurred in the drafting of a jury instruction. "Unless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice." Utah R. Crim. P. 19(e). Generally, "the term 'manifest injustice' is synonymous with the 'plain error' standard." *State v. Casey*, 2003 UT 55, ¶ 40, 82 P.3d 1106 (citation and internal quotation marks omitted). "[T]o establish the existence of plain error and to obtain appellate relief from an alleged error that was not properly objected to, the appellant must show . . . (i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

¶6    Third, Pullman contends that Utah Code section 76-5-407, which defines what kind of touching satisfies the actus reus elements of various sexual offenses, is unconstitutional because it is "so broad as to include even lawful or appropriate contact." When preserved, "[w]e review constitutional challenges for correctness." *See State v. Manwaring*, 2011 UT App 443, ¶ 12, 268 P.3d 201. However, claims not raised before the trial court generally may not be raised on appeal. *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. This "preservation rule applies to every claim, including constitutional questions, unless a defendant can demonstrate that 'exceptional circumstances' exist or 'plain error' occurred." *Id.* The exceptional circumstances exception "applies primarily to rare procedural anomalies." *Dunn*, 850 P.2d at 1209 n.3; *see also State v. Irwin*, 924 P.2d 5, 8 (Utah Ct. App. 1996) (noting that the exception allows an appellate court to determine "that even though an issue was not raised below and even though the plain error doctrine does not apply, unique procedural circumstances nonetheless permit consideration of the merits of the issue on appeal").

¶7    Fourth, Pullman contends that the trial court erred in admitting two pieces of evidence: (1) his prior conviction for lewdness and (2) testimony by his ex-wife that Pullman had repeatedly sought to engage in anal sex with her. He argues that this evidence should have been excluded under both rules 403 and

404 of the Utah Rules of Evidence. *See* Utah R. Evid. 403 (LexisNexis 2012); *id.* R. 404.[3] "We review a trial court's decision to admit or exclude evidence under [r]ule 403 . . . under an abuse of discretion standard . . . ." *Diversified Holdings, LC v. Turner*, 2002 UT 129, ¶ 6, 63 P.3d 686. Similarly, "we review a trial court's decision to admit evidence under rule 404(b) of the Utah Rules of Evidence under an abuse of discretion standard." *State v. Nelson-Waggoner*, 2000 UT 59, ¶ 16, 6 P.3d 1120. In doing so, we "review the record to determine whether the admission of other bad acts evidence was scrupulously examined by the trial judge in the proper exercise of that discretion." *Id.* (citation and internal quotation marks omitted).

¶8     Fifth, Pullman contends that he received ineffective assistance of counsel at trial in relation to his jury instruction and admissibility of evidence claims. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.


ANALYSIS

I. Sufficiency of the Evidence

¶9     Pullman first contends that the evidence presented at trial was insufficient to support his convictions because Victim's testimony "lacked specificity as to time, place, or circumstance." The heart of Pullman's complaint is that Victim did not testify as to the time or geographic location of the abusive acts. Victim testified

---

3. Because the rules in effect at the time of the offense do not differ in any way material to our analysis from those currently in effect, we cite the current version of the Utah Rules of Evidence for the convenience of the reader. *See* Utah R. Evid. 403 advisory committee note (stating that the 2011 "changes are intended to be stylistic only" and "[t]here is no intent to change any result in any ruling on evidence admissibility"); *id.* R. 404 advisory committee note (same).

that the events supporting the sodomy on a child charge occurred some time between August and November 2008. She also testified that Pullman groped her inappropriately once every week or two between 2007 and 2008 and that this conduct occurred in Cedar City.

¶10 Victim's testimony was sufficient on this point. Our supreme court noted in *State v. Fulton* that "time is not a statutory element of the offense" of sodomy on a child. 742 P.2d 1208, 1213 (Utah 1987). The *Fulton* court held that because the defendant had not "asserted a statute of limitations, age, or other analogous defense," the State was not required to prove the time of the offense. *Id.* Moreover, "the mere assertion of an alibi defense does not impose on the prosecution the additional burden of proving the precise date of the act." *Id.* Pullman has not asserted any of these defenses. The only elements of the offense at issue were whether Defendant touched Victim and with what intent; thus "the State did not need to prove the precise year in which the abuse occurred." *See State ex rel. D.T.*, 2006 UT App 132, ¶ 13, 134 P.3d 1148 (citing *State v. Marcum*, 750 P.2d 599, 601 (Utah 1988) (affirming conviction for sexual abuse of a child under the age of fourteen)). Moreover, our supreme court has "acknowledged that in child sexual abuse prosecutions, identifying the specific date, time, or place of the offense is often difficult owing to the inability of young victims to provide this information." *State v. Taylor*, 2005 UT 40, ¶ 12, 116 P.3d 360. "Responding to the realities of cognitive development," the court wrote, "we have been less demanding of exact times and dates when young children are involved." *Id.*

¶11 Pullman also argues that "the testimony [was] not precise as to the touching itself or the intent behind it." Specifically, he complains that while Victim's testimony uses the terms "boobs" and "butt," "they are not precisely addressed as the anus, buttocks, [genitalia,] or breasts of [Victim]." However, the law does not require anyone, much less a child, to use technical or anatomically accurate terminology in describing sexual abuse where, as here, the words actually used are clear.

¶12    Finally, Pullman argues that the evidence of sodomy was insufficient, not because of the terminology used, but simply because the acts Victim described fall short of the statutory definition of sodomy on a child. Sodomy on a child is "any sexual act upon or with a child who is under the age of 14, involving the genitals or anus of the actor or the child and the mouth or anus of either person." *See* Utah Code Ann. § 76-5-403.1 (LexisNexis 2012). In a prosecution for this offense, "any touching, even if accomplished through clothing, is sufficient to constitute the relevant element of the offense." *Id.* § 76-5-407(3). Pullman asserts that Victim's testimony fell short of describing a sexual act involving the touching of Victim's anus.

¶13    The conviction for sodomy on a child rests on three testimonial statements of Victim. First, she testified that one night when she was "really sleepy" as a result of some medication she had taken, "he'd come into my room and tried to take my panties off and stick his dick into my butt." Second, when asked whether Pullman's penis went "inside you—your bum?" Victim answered, "No. I pushed him away before it did." But she also answered affirmatively when asked if she could feel it "there." Finally, when asked "How did it feel?" Victim responded, "It hurt."

¶14    We conclude that the evidence here was insufficient to support the conviction for sodomy on a child. Even viewing the evidence in the light most favorable to the jury's verdict, a verdict may not rest on mere speculation:

> "[N]otwithstanding the presumptions in favor of the jury's decision[,] this Court still has the right to review the sufficiency of the evidence to support the verdict. The fabric of evidence against the defendant must cover the gap between the presumption of innocence and the proof of guilt. In fulfillment of its duty to review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict, the reviewing court will stretch the evidentiary fabric as far as it will go. But

> this does not mean that the court can take a speculative leap across a remaining gap in order to sustain a verdict."

*State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94 (quoting *State v. Petree*, 659 P.2d 443, 444–45 (Utah 1983)). Sex crimes are defined with great specificity and require concomitant specificity of proof. For example, when a defendant is charged with rape of a child, a crime that requires penetration (unlike sodomy on a child), a victim's testimony that the defendant "put the tip of his penis 'on' her labia" but not that he "put his penis between the outer folds of her labia" is not sufficient to support a conviction. *See State v. Simmons*, 759 P.2d 1152, 1154 (Utah 1988) (reversing conviction for rape of a child).

¶15    *State v. Taylor* illustrates testimony sufficient to support a conviction for sodomy on a child. 2005 UT 40, 116 P.3d 360. The victim, who was six years old on the date of the offense, "stated that Mr. Taylor removed his pants and underwear, as well as her underwear but not her nightgown." *Taylor*, 2005 UT 40, ¶ 3. "She explained that he offered her 'half a dollar' to 'suck on his private,' which she described as tasting like urine." *Id.* The State also introduced a note the child had written to her mother that read, with corrected spelling, "Bryan told me to suck on his private and I did it." *Id.*

¶16    Here, Victim's testimony lacked a similarly specific description of the elements of the crime of sodomy on a child. Although she described a sexual act involving Pullman's penis and her *buttocks*, the relevant statutes require involvement—indeed "touching"—of the *anus*. Our cases have drawn a distinction between *anus* and *buttocks*. For example, in construing a related statute, we have concluded that "touching the anus of any child" and "touching the buttocks of any child" are "alternative ways" to commit the crime of sexual abuse of a child. *State v. Escamilla-Hernandez*, 2008 UT App 419, ¶ 13, 198 P.3d 997; *see also State v. Jacobs*, 2006 UT App 356, ¶ 6 n.2 (distinguishing between "buttocks" and "anus" in the context of forcible sexual abuse).

Moreover, Victim here was an articulate fourteen-year-old capable of drawing the relevant distinction if questioned about it. Her testimony that Pullman "tried to take [her] panties off and stick his dick into [her] butt" and that "it hurt," is "sufficiently inconclusive . . . that reasonable minds must have entertained a reasonable doubt," *see State v. Mead*, 2001 UT 58, ¶ 65, 27 P.3d 1115 (citation and internal quotation marks omitted), as to whether Pullman's act involved the touching of her anus, even through her clothing. We therefore agree with Pullman that the evidence was not sufficient to support his conviction for sodomy on a child.

¶17    Pullman is not off the hook, however. If the evidence is insufficient to support a conviction on the offense for which a defendant was convicted but is sufficient to support a conviction on a lesser included offense, and the trier of fact necessarily found every fact required for conviction of that included offense, an appellate court may set aside the judgment of conviction and enter judgment for the lesser included offense. Utah Code Ann. § 76-1-402(5) (LexisNexis 2012); *see also State v. Dunn*, 850 P.2d 1201, 1209–11 (Utah 1993) (concluding that Utah appellate courts have "the authority to modify criminal judgments on appeal" and to "enter judgment on a lesser included offense when an error has tainted the conviction for the greater offense"); *State v. Powasnik*, 918 P.2d 146, 150 n.2 (Utah Ct. App. 1996) ("Utah appellate courts may modify criminal convictions and enter judgments of conviction for a lesser included offense on appeal.").

¶18    An attempt to commit an offense is included in that offense. Utah Code Ann. § 76-1-402(3)(b). This conclusion follows logically from the fact that a defendant is guilty of an attempted crime if he or she "engages in conduct constituting a substantial step toward commission of the crime" with the intent to commit the crime. *Id.* § 76-4-101. Attempted sodomy on a child is thus a lesser included offense of sodomy on a child.

¶19    We have no difficulty here in concluding that Victim's testimony amply showed that Pullman attempted the crime of which he was convicted—that he took a substantial step toward

committing sodomy on a child and that he intended to accomplish that crime. *See id.* Indeed, Pullman's counsel conceded at oral argument that Victim's testimony was sufficient to support a conviction for the lesser offense. We thus conclude that the trier of fact necessarily found every fact required for conviction of the lesser included offense of attempted sodomy on a child. *See id.* § 76-1-402(5).[4]

¶20 Accordingly, we vacate Pullman's conviction for the crime of sodomy on a child, enter a conviction for the crime of attempted sodomy on a child, *see id*. § 76-5-403.1, and remand to the trial court for imposition of sentence on the latter crime.

## II. Jury Instruction Defining "Touching"

¶21 Pullman contends that the trial court gave an erroneous jury instruction and that the giving of this instruction constituted a manifest injustice.[5] Which instruction Pullman contests, and how he believes it was erroneous, are not entirely clear from his brief. He does not identify any jury instruction by name or number, nor does he quote any jury instruction. However, because he has attached jury instruction number 14 (Instruction 14) as an addendum to his brief and because he quotes a related statutory section, we infer that Instruction 14 is the focus of his complaint. Instruction 14 defined *touching* for the jury:

> You are instructed that in any prosecution for Sodomy on a Child and Aggravated Sexual Abuse of a Child, any touching, even if accomplished through clothing, is sufficient to constitute the relevant element of the offense.

---

4. Though "lesser," attempted sodomy on a child is nevertheless a grave offense—a first degree felony with a range of severe prison terms. *See* Utah Code Ann. § 76-4-102(1)(d)(iii) (LexisNexis 2012).

5. Pullman's trial counsel did not object to the jury instructions; accordingly, Pullman alleges manifest injustice.

In addition, Pullman cites three statutory sections. The first two define the crimes of sexual abuse of a child and sodomy on a child. *See* Utah Code Ann. §§ 76-5-404.1, -403.1 (LexisNexis 2012). The third defines *penetration* and *touching* for purposes of these and related sex crimes. *See id.* § 76-5-407. It specifies that, in any prosecution for the crime of sexual abuse of a child or sodomy on a child "any touching, even if accomplished through clothing, is sufficient to constitute the relevant element of the offense." *Id.* § 76-5-407(3).

¶22    Pullman then argues, "The broad nature of touching in the statute must be construed in the context of the criminal act and at the very least construed in the context of its entirety to qualify what was intended. *Otherwise, any touching, however slight, would include noncriminal as well as proper conduct.*" (Emphasis added). The trial court's instructing the jury in keeping with the statutory definition of *touching*, Pullman maintains, "can and did cause the jury to assume that in the normal exchange between father and daughter touching and teasing or disciplining would be sufficient to qualify as an element of the offense."

¶23    We conclude that any possible error was invited. Under the invited error doctrine, a party cannot take "advantage of an error committed at trial when that party led the trial court into committing the error." *See State v. Geukgeuzian*, 2004 UT 16, ¶ 9, 86 P.3d 742 (citation and internal quotation marks omitted). And "if the defendant invited the error, we will not review the error for manifest injustice." *State v. Cooper*, 2011 UT App 234, ¶ 5, 261 P.3d 653 (citation omitted). Here, Pullman's trial counsel approved Instruction 14. Accordingly, we decline to review Instruction 14 for manifest injustice.

¶24    In a separate contention on appeal, Pullman cursorily argues that his trial counsel was ineffective for not objecting to Instruction 14 and for not proposing "an instruction more appropriate to limit consideration of touching to the context of the charged offenses as provided by statute." To prevail, Pullman must show that his counsel's performance was deficient (i.e., that it fell below an

objective standard of reasonable professional judgment) and that it prejudiced Pullman. *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *see also Bundy v. Deland*, 763 P.2d 803 (Utah 1988). Merely asserting that a jury instruction that correctly informs the jury of the statutory definition of a relevant term was "insufficient and inappropriate" falls well short of demonstrating deficient performance.

¶25   In any event, the jury instructions when read as a whole did not suggest that "innocent" touching could satisfy all the elements of the charged offenses. *See State v. Taylor*, 2005 UT 40, ¶ 24, 116 P.3d 360 (reiterating that jury instructions must be considered as a whole). Instruction 11 required the jury to find that Pullman "engaged in a sexual act upon or with" Victim in order to convict Pullman of sodomy on a child. And Instructions 12 and 13 required the jury to find that Pullman intended to "cause substantial emotional pain" or intended to "arouse or gratify sexual desire" in addition to the physical act of touching in order to convict him of aggravated sexual abuse of a child. When read together, these instructions properly instructed the jury as to both the physical and mental elements required for conviction. In sum, Pullman has not shown that his trial counsel rendered ineffective assistance of counsel.

### III. Constitutional Challenge to Section 76-5-407

¶26   Pullman next contends that Utah Code section 76-5-407(3), which defines the types of touching necessary to satisfy the actus reus elements of several sexual offenses, is unconstitutional because it is "so broad as to include even lawful or appropriate contact." *See* Utah Code Ann. § 76-5-407 (LexisNexis 2012).[6]

---

6. Although Pullman draws subsection (2)(b) of section 76-5-407 to our attention, only subsection (3) is relevant here. Pullman was not charged with any offense listed in Utah Code section 76-5-407(2). Instead, the offenses he was charged with and convicted of are listed under Utah Code section 76-5-407(3). Therefore, to the extent
(continued...)

¶27   This claim was not preserved in the trial court. "[W]e are resolute in our refusal to take up constitutional issues which have not been properly preserved, framed and briefed . . . ." *Brigham City v. Stuart*, 2005 UT 13, ¶ 14, 122 P.3d 506, *rev'd on other grounds*, 547 U.S. 398 (2006). Pullman concedes that he did not raise this constitutional challenge at trial and accordingly relies on the exceptional circumstances exception to the preservation requirement. The exceptional circumstances exception is "ill-defined . . . and applies primarily to rare procedural anomalies." *State v. Dunn*, 850 P.2d 1201, 1209 n.3 (Utah 1993) (citation omitted); *see also State v. Irwin*, 924 P.2d 5, 8 (Utah Ct. App. 1996). In an attempt to demonstrate exceptional circumstances here, Pullman asserts that Victim's testimony was imprecise, that a jury instruction was erroneous, and that inadmissible evidence was admitted at trial. Even assuming that these errors occurred, Pullman does not explain how ordinary trial errors of this type are exceptional, rare, or anomalous in this instance. Nor does he cite any case law illuminating the exceptional circumstances rule. He thus has not demonstrated that this case fits within it. Accordingly, he has not demonstrated that this exception to the preservation rule applies.

## IV. Evidence Concerning Anal Sex

¶28   Fourth, Pullman contends that the trial court improperly admitted evidence of "activity . . . which his ex-wife testified to at trial." In August 2007, Pullman remarried his ex-wife (Wife). During their first marriage, Pullman had repeatedly asked Wife for anal sex. Wife did not enjoy it and, before remarrying Pullman, she warned, "Don't even ask, don't even think about it, don't try it." Nevertheless, during the second marriage, Pullman again sought anal sex with Wife. She testified that Pullman would "curl up in bed next to [her] and try and insert himself." She would "have to smack him away [or] get up and leave the room."

---

6. (...continued)
possible, we construe his arguments as attacking subsection (3).

¶29 Pullman argues that this evidence was inadmissible under rules 403 and 404(b) of the Utah Rules of Evidence.[7] The State responds that the testimony was properly admitted for the permissible purpose of showing motive and that, in any event, its admission was harmless.

¶30 Admission of other acts evidence involves a three-step analysis. First, "the trial court must . . . determine whether the bad acts evidence is being offered for a proper, noncharacter purpose, such as one of those specifically listed in rule 404(b)." *State v. Nelson-Waggoner*, 2000 UT 59, ¶ 18, 6 P.3d 1120. If so, "the court must determine whether the bad acts evidence meets the requirements of rule 402, which permits admission of only relevant evidence." *Id.* ¶ 19. "Finally, the trial court must determine whether the bad acts evidence meets the requirements of rule 403 of the Utah Rules of Evidence." *Id.* ¶ 20. "A trial court's admission of prior bad acts evidence is reviewed for abuse of discretion, but the evidence 'must be scrupulously examined by trial judges in the proper exercise of that discretion.'" *State v. Verde*, 2012 UT 60, ¶ 13, 296 P.3d 673 (quoting *State v. Decorso*, 1999 UT 57, ¶ 18, 993 P.2d 837).

A. Noncharacter Purpose

¶31 Rule 404(b) allows admission of other acts evidence for proper noncharacter purposes such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Utah R. Evid. 404(b). This list is not exhaustive. *See State v. Houskeeper*, 2002 UT 118, ¶ 28, 62 P.3d 444; *State v. Ramirez*, 924 P.2d 366, 369 (Utah 1996). Rule 404(b) is "an inclusionary rule." *State v. Kooyman*, 2005 UT App 222, ¶ 26,

---

7. Pullman also complains that the court erred in admitting his prior conviction for lewdness into evidence. Because evidence of this prior conviction was never presented to the jury, there is "no reasonable likelihood that the [alleged] error affected the outcome of the proceedings." *See State v. Verde*, 770 P.2d 116, 120 (Utah 1989).

112 P.3d 1252 (citation and internal quotation marks omitted). "Prior bad act evidence is only excluded where the *sole* reason it is being offered is to prove bad character or to show that a person acted in conformity with that character." *State v. Nielsen*, 2012 UT App 2, ¶ 11, 271 P.3d 817 (citation and internal quotation marks omitted). Thus, "[s]o long as the evidence is not aimed at suggesting action in conformity with bad character, it is admissible under rule 404(b)." *Verde*, 2012 UT 60, ¶ 15.

¶32   The State asserts that the purpose of the evidence was to show Pullman's motive for attempting to engage in anal sex with Victim. According to the State, this evidence showed that Pullman's desire for anal sex was unsatiated due to Wife's refusal to engage in it, prompting him to turn to a surrogate, Victim, whom he had already been molesting for several months. Pullman does not challenge this explanation.[8]

¶33   Other jurisdictions have allowed the admission of bad acts evidence in similar situations. For example, in *Warner v. State*, a defendant's cohabitant testified that the defendant had asked her "three to five times to have anal intercourse and she refused." 2006 OK CR 40, ¶ 64, 144 P.3d 838. The Court of Criminal Appeals of Oklahoma held that this testimony was "relevant to show [the defendant's] motive and intent to attempt anal intercourse with [a

---

8. Pullman's brief generally, and on this point specifically, is unfocused. For example, Pullman refers to "the potentially harsh penalties for all three counts" and to evidence excluded under rule 412 of the Utah Rules of Evidence in his discussion of rule 404(b) without explaining how they might contribute to the analysis. And he does not argue that proof of motive is indistinguishable from proof of propensity when it is used to prove that the defendant is the sort of person who is motivated by certain things. But formulating such an argument is the job of the appellant, not the appellate court. We are not permitted "to become [Pullman's] advocate by formulating arguments on [his] behalf or translating [his] problematic arguments into plausible ones." *B.A.M. Dev., LLC v. Salt Lake County*, 2012 UT 26, ¶ 35 n.8, 282 P.3d 41.

child] victim." *Id.* (interpreting Oklahoma Statutes, title 12, section 2404(B), which is substantively similar to rule 404(b) of the Utah Rules of Evidence). Likewise, a federal district court affirmed the California Court of Appeal's conclusion that testimony from a defendant's wife that he often asked for anal sex and that she refused him was relevant "to show that [the defendant] had the intent and motive to have anal sex with [a child victim] shortly after" the wife's refusals. *Canas v. Yates*, No. EDCV 07-00334-VBF(MLG), 2009 WL 3483931, at *14 (C.D. Cal. Oct. 27, 2009) (analyzing California Evidence Code section 1101(b), which, like our rule 404(b), allows admission of bad acts evidence to prove, inter alia, motive or intent). And the Georgia Court of Appeals held that testimony by a defendant's ex-wife that he had asked her "at least twice weekly" for anal sex for several years and that she had refused each time save one was admissible to show the defendant's "state of mind and motive" for anally raping a child. *Barrett v. State*, 559 S.E.2d 108, 110 (Ga. Ct. App. 2002) (interpreting Georgia's then-current "similar transaction" rule).

¶34 We conclude that Pullman has not demonstrated that the testimony was offered for an impermissible purpose.

B. Relevance Under Rule 402

¶35 Bad acts evidence is subject to a relevance analysis under rule 402 of the Utah Rules of Evidence. *See State v. Nelson-Waggoner*, 2000 UT 59, ¶ 19, 6 P.3d 1120. Rule 402 permits the admission of relevant evidence while rule 401 defines evidence as relevant if it has any tendency to make a fact of consequence to the determination of the action more or less probable. Utah R. Evid. 401; *id.* R. 402.

¶36 Pullman asserts that Wife's testimony "had no tendency to make the existence of such information necessary to determine if [Pullman] committed sodomy or aggravated abuse upon a child more probable or less probable." He further argues that, "there seems to be a significant distinction between the activity for which [Pullman] was accused and that which his ex-wife testified to at trial. In particular, the activity involving his ex-wife does not

appear to have been forced or nonconsensual." In support, he relies principally on *State v. Dunston*. *See* 588 S.E.2d 540 (N.C. Ct. App. 2003). In *Dunston* the Court of Appeals of North Carolina concluded that evidence that a defendant engaged in consensual anal sex with his wife was not relevant to the question of whether he had engaged in anal sex with his young foster daughter. *Id.* at 545. The court reasoned that "the fact defendant engaged in and liked consensual anal sex with an adult, whom he married, is not by itself sufficiently similar to engaging in anal sex with an underage victim . . . to be admissible under Rule 404(b)." *Id.* (referring to the North Carolina evidentiary rule analogous to rule 404(b) of the Utah Rules of Evidence).

¶37    The State does not contend that "by itself" the fact that Pullman desired anal sex with a consenting adult was relevant in this child abuse case. Rather, the State argues that the *Dunston* case lacks the element that makes Wife's testimony here relevant—she was denying Pullman anal sex, creating a motive for him to look elsewhere for it. In other words, Pullman desired to engage in anal sex with *someone*, and when his wife rebuffed him, he turned his attention to Victim, whom he had already sexually victimized. Moreover, the State argues, cases involving the denial of anal sex generally allow the admission of the evidence to show motive even when the victim of the charged crime is a child. *See, e.g., Canas*, 2009 WL 3483931 at *14 (holding admissible testimony by an adult woman that she had refused to engage in anal sex with defendant and that anal sex was "all he wanted to do" with her, because testimony was relevant to charge that defendant attempted anal sex with girls aged eleven and thirteen); *Warner*, 2006 OK CR 40 ¶¶ 64–66 (holding admissible a girlfriend's testimony that during the two weeks before the victim's murder the defendant had requested and been denied anal sex where defendant had been charged with anal rape and murder of a young girl); *Barrett*, 559 S.E.2d at 110–11 (holding admissible ex-wife's testimony that she refused to engage in anal sex with defendant where he was charged with having anal sex with his fourteen-year-old stepson).

¶38    We conclude that Pullman has not demonstrated that the testimony was irrelevant.

C. Rule 403 Analysis

¶39    Finally, Pullman contends that the danger of unfair prejudice posed by the challenged testimony substantially outweighed its probative value and that it had an undue tendency to suggest a decision on an emotional basis. A trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Utah R. Evid. 403.[9]

¶40    "Rule 403 does not require a trial court to dismiss all prejudicial evidence[,] because '[a]ll effective evidence is prejudicial in the sense of being damaging to the party against whom it is offered.'" *State v. Killpack*, 2008 UT 49, ¶ 53, 191 P.3d 17 (second alteration in original) (quoting *Woods v. Zeluff*, 2007 UT App 84, ¶ 7, 158 P.3d 552). "Rather, the rule only requires that the trial court measure the danger the evidence poses of causing *unfair* prejudice to a defendant." *Id.* (citation and internal quotation marks omitted). Unfair prejudice, within the context of rule 403, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Maurer*, 770 P.2d 981, 984 (Utah 1989) (citation and internal quotation marks omitted).

¶41    Here, Pullman contends that the trial court "failed to appreciate the devastating impact that the admission of such evidence would have in being prejudicial under Rule 403," but offers no further explanation, analysis, or authority in support of that claim. He does not explain why any prejudice was unfair and fails to assert, much less demonstrate, that the danger of unfair prejudice substantially outweighed the testimony's probative value. An issue is inadequately briefed "when the overall analysis

---

9. Pullman mentions the dangers of "unfair prejudice, confusion of the issues, [and] misleading the jury" but offers argument only on the first factor. We therefore confine our analysis to the first factor.

of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998). That is the case here. Therefore, we do not address the issue further.[10]

¶42   Accordingly, Pullman has failed to demonstrate that the trial court abused its discretion in determining that Wife's prior act testimony was relevant to a noncharacter purpose, *see* Utah R. Evid. 404(b), and that its probative value was not "substantially outweighed by a danger of . . . unfair prejudice," *see id.* R. 403.

## V. Evidence of Pornography Viewing

¶43   Pullman's fifth contention is that he was afforded ineffective assistance of counsel because his trial counsel was ineffective for failing to object "to the State's introduction of testimony regarding [Pullman's] viewing of pornography." Pullman must show that counsel's performance was deficient and that Pullman was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 690–92 (1984); *see also Bundy v. Deland*, 763 P.2d 803, 805 (Utah 1988).

¶44   Victim testified that Pullman viewed pornography in her presence, that he was naked while doing so, and that he would "usually just [tell Victim] to go away." Pullman asserts that this testimony was irrelevant to the charged offenses. Assuming

---

10. The State made a substantive response. It asserts that "while consensual anal sex may have carried a negative or even deviant connotation in the past, sexual mores have changed." In support of this assertion, the State cites a national survey concluding that among adults aged twenty-five to forty-four, 36% of women and 44% of men report having had anal sex with an opposite-sex partner. *See* Anjani Chandra et al., *Sexual Behavior, Sexual Attraction, and Sexual Identity in the United States: Data From the 2006–2008 National Survey of Family Growth* at \*9, *available at* http://www.cdc.gov/nchs/data/nhsr/nhsr036.pdf (last visited June 4, 2013).

without deciding that Pullman is correct, we cannot agree with his additional assertion that "there can be no doubt about the prejudicial effect on the jury." Pullman offers no support for this assertion. It is certainly plausible that Pullman's pornography viewing, particularly in front of a child, would cast a negative light on him at trial. On the other hand, absent any explanation on Pullman's part, we are unwilling to assume that a jury would be so prejudiced by testimony that the defendant viewed pornography as to convict that defendant on unrelated charges. *See Strickland*, 466 U.S. at 694 (in order to demonstrate ineffective assistance of counsel, an appellant must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different").

¶45   We conclude that Pullman has not shown the requisite prejudice to sustain a claim of ineffective assistance of counsel. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. "If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* Therefore, because we have determined that one of the two prongs is unsatisfied, we reject Pullman's ineffective assistance of counsel claim.

CONCLUSION

¶46   The evidence was insufficient to sustain Pullman's conviction for sodomy on a child but sufficient to convict him of the lesser included offense of attempted sodomy upon a child. Any error in the jury instructions was invited, and Pullman's constitutional claims are not properly before us. Furthermore, Pullman has not demonstrated that his trial counsel was ineffective. Finally, Pullman has not demonstrated that admission of Wife's testimony violated Utah Rules of Evidence 403 or 404(b).

We affirm in part and reverse and remand for resentencing in part.[11]

––––––––––

11. To the extent that we have not addressed other points or subpoints raised or suggested in Pullman's brief, we have determined that they are foreclosed by the foregoing analysis, are inadequately briefed, or lack merit. Accordingly, we decline to address them further. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) ("[T]his court need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal. Rather it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court."), *overruled on other grounds as recognized by Archuleta v. Galetka*, 2011 UT 73, ¶ 29, 267 P.3d 232.